WILLIAMS, Ginger, Watkins, Albert, Moody, Luther, Moody, Fred, Moody, Hayver, Jerry, James, and Thomas, Alfred, Graham, Roosevelt, Powell, Joseph

v.

TRI–COUNTY GROWERS, INC., a corporation.

Appeal of TRI–COUNTY GROWERS, INC., Cross-Appellant in No. 83–1430 Appellee in No. 83–1478.

Appeal of A. WATKINS, L. Moody, F. Moody, H. Moody, and Joseph Powell, Appellants in No. 83–1478 Cross-Appellees in No. 83–1430.

Nos. 83–1430, 83–1478.

United States Court of Appeals, Third Circuit.

Argued July 19, 1984.

Decided Oct. 22, 1984.

Larrick B. Stapleton (argued), Fell & Spalding, Philadelphia, Pa., for Tri-County Growers, Inc., cross-appellant in No. 83–1430 and appellee in No. 83–1478.

Arthur N. Read, Friends of Farmworkers, Inc., Philadelphia, Pa., and G. Geffert (argued), West Virginia Legal Services Plan, Inc., Martinsburg, W. Va., for A. Watkins, L. Moody, F. Moody, H. Moody, and Joseph Powell, appellants in No. 83–1478 and cross-appellees in No. 83–1430.

Before ADAMS, HIGGINBOTHAM and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

Defendant appeals from the district court's Memorandum Opinions and Orders of February 16, 1983, and May 17, 1983, which awarded plaintiffs unpaid minimum wages under the Fair Labor Standards Act, 29 U.S.C. §§ 206(a)(5), 216(b) (the "FLSA"), and statutory damages under the Farm Labor Contractor Registration Act, 7 U.S.C. §§ 2045(e), 2050(a) (the "FLCRA"), *repealed by* the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–72 (the "MSPA").[1] Plaintiffs filed a cross-appeal contending that the district court erroneously denied them liquidated damages under the FLSA, erroneously denied them statutory damages under two other sections of the FLCRA, erroneously denied them liquidated damages under the West Virginia Wage Payment and Collection Act, W.Va.Code §§ 21–5–4(b), (c) and (e) (the "West Virginia Act"), and erroneously calculated the amount of attorneys' fees. We have jurisdiction pursuant to 28 U.S.C. § 1291.[2] For the reasons that follow, we affirm in part and reverse in part the judgments of the district court and remand for further proceedings consistent with this opinion.

This remand is necessary, *inter alia*, to carry out the rule of *The Schooner Peggy*, 5 U.S. (1 Cranch) 103, 110, 2 L.Ed. 49 (1801), and *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974); *see Kirby v. United States*, 745 F.2d 204 (3d Cir.1984), at 209. In *Bradley*, 416 U.S. at 711, 94 S.Ct. at 2016, the Court said:

"... a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."

Because appellate court decisions clarifying the applicable law in both (a) the district court's opinion of February 16, 1983,

---

1. The relevant sections of the FLCRA in issue in this appeal have been recodified at 29 U.S.C. §§ 1801–72.

2. The district court had jurisdiction under the FLCRA, 7 U.S.C. § 2050a(a), the FLSA, 29 U.S.C. § 216(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1337. The West Virginia claim was enter-

tained under the principles of pendent jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Shaffer v. Board of School Directors, Etc.*, 687 F.2d 718, 722 (3d Cir.1982), *cert. denied*, 459 U.S. 1212, 103 S.Ct. 1209, 75 L.Ed.2d 449 (1983).

on the merits (24a–55a) (*see e.g. Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1149 (3d Cir.1983)), and (b) that court's opinion on attorneys' fees of May 17, 1983 (143a–152a) (*see e.g. Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), at parts III–V; *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 592–98 (3d Cir.1984); *Ursic v. Bethlehem Mines*, 719 F.2d 670 (3d Cir.1983); *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 217 (3d Cir.1983); *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180–81 (3d Cir.1983)), have been issued contemporaneously with or after the district court opinions, they could not have been considered by the district court in entering its final judgments in this case.

### I.

This case originated in June of 1982 when the plaintiffs, five immigrant farm workers,[3] instituted suit against Tri-County Growers, Inc. ("Tri-County"), their employer, for its failure to pay all wages due to the plaintiffs under the FLSA and the West Virginia Act and to comply with assorted provisions of the FLCRA. Plaintiffs were recruited and hired pursuant to a Clearance Order that was circulated through the interstate employment service system administered by the United States Department of Labor. Tri-County circulated the Clearance Order, which sought individuals to pick apples in Martinsburg, West Virginia. The Clearance Order guaranteed the workers $3.62 per hour and stated that an average picker should pick an average of 85 bushel boxes of apples per day (548a).

Each plaintiff was referred to the job by the Philadelphia office of the Pennsylvania Department of Labor and Industry, Office of Employment Security.

Tri-County is a farm labor contractor within the meaning of section 2042(b) of the FLCRA. In its capacity as such, Tri-County recruits seasonal workers and furnishes them to a number of orchards in West Virginia. During the fall of 1981, Tri-County recruited the plaintiffs in this action. Tri-County, on behalf of Porterfield Orchards, employed plaintiffs Albert Watkins, Luther Moody, and Joseph Powell from September 19, 1981, through September 23, 1981, when they were fired. Plaintiff Hayver Moody worked from September 24 to September 29, 1981, and Fred Moody worked from September 23 through October 3, 1981. Plaintiffs and their crew leader, Mary Wesley, testified that, although they generally worked from 8:00 a.m. until 5:00 p.m. daily without stopping for lunch, plaintiffs were not credited with all the hours they actually worked.[4]

The evidence demonstrates that Tri-County's time records originated from a "picking ticket."[5] Joan Dillard, a timekeeper employed by Porterfield Orchards, testified that each picker had his own "picking ticket." When a worker filled a bin, which held 20 to 25 boxes of fruit, the worker placed a "picking ticket" on the bin. Dillard would pick up two copies of the "picking ticket" and record the date and the number of units picked on a "picking slip" (191a–92a). If a bin was not full, or was only partially full, no ticket would be placed on the bin and the picker would not

---

**3.** Five other individuals at various times sought to participate as plaintiffs in this litigation. Upon motion of the defendant and agreement of plaintiffs' attorneys, the claims of Ginger Williams and Alfred Thomas were dismissed by court order on November 15, 1982. Plaintiffs' attorneys withdrew as the attorneys for one other individual, Roosevelt Graham, Jr., who had sought to intervene. The district court denied the motion for intervention of Jack Douglass and struck the pleadings of James Jerry (56a–57a). None of these determinations is before this court.

**4.** On their first day in the orchard, for example, the plaintiffs began working shortly after listening to one-half hour of instructions from John Porterfield, president of Tri-County and vice president of Porterfield Orchards. Although the instructions began at 8:00 a.m. and lasted only for one-half hour, Tri-County did not credit the plaintiffs for any work performed prior to 11:00 a.m. (474a–76a, 562a–68a).

**5.** To understand Tri-County's payroll system, it is critical to distinguish between the "picking ticket" and the "picking slip."

receive any credit for the number of boxes picked. Dillard also recorded the number of hours that each picker worked on the "picking slip." She based the number of hours with which each worker was credited on her observations when she was in the orchards;[6] she also routinely deducted one hour for lunch. Two other Porterfield employees, John Porterfield and Boyd Brown, also observed the work performance of the picking crews at intervals throughout the day. The plaintiffs, however, were not under constant observation by any Porterfield employee.

The "picking slip" included categories entitled "Time Started," "Time Ended," "Hours Offered," "Hours Worked," "Hours Not Worked," and "Units Picked" (562a).[7] Dillard turned the "picking slips" in to Porterfield Orchards, which turned them over to Tri-County. These "picking slips" served as the basis for Tri-County's payroll records. At the end of each pay period, the plaintiffs received paychecks that fully disclosed the amount of money deducted for social security and meals, a service provided by Tri-County. Tri-County, however, did not inform the plaintiffs that Porterfield Orchards paid Tri-County 19 cents for each bushel box picked by the plaintiffs. Moreover, Tri-County failed to provide copies of all records Tri-County was required to keep under the FLCRA and 29 C.F.R. § 40.51(1) to Porterfield Orchards.

The case was tried before the court, sitting without a jury, largely on deposition testimony. Three plaintiffs and one defense witness presented limited testimony in person at the trial. After all evidence was presented, the court first considered plaintiffs' FLSA claims.

The court found, *inter alia*, "that the defendant failed to keep accurate time records" (35a) and that plaintiffs were not paid "their guaranteed minimum hourly wage [of $3.62 per hour] for those hours which they have proven they were in the Porterfield Orchard" (37a, 41a).[8] The court found, however, that plaintiffs were not entitled to statutory liquidated damages under the FLSA, 29 U.S.C. § 216(b), because the defendant's failure to pay the required wages "was in good faith and [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the Fair Labor Standards Act ..." (38a).

The court next addressed plaintiffs' FLCRA claims. After determining that a private right of action exists under the FLCRA, the court awarded each plaintiff statutory damages of $500. for each of three intentional violations of the FLCRA and the regulations promulgated thereunder. In its Memorandum Opinions of February 16, 1983, and May 17, 1983, the court rejected plaintiffs' contentions that other sections of the FLCRA and the Code of Federal Regulations were violated.

In ruling on plaintiffs' final substantive claim, the district court found that the West Virginia Wage Payment and Collection Act, W.Va.Code § 21-5-4(e), was not "intended to remedy the ... situation where the employer has consistently maintained that it has paid all wages it believed due based on the hours worked as recorded by it for each plaintiff" (52a-53a). Consequently, the court refused to award plaintiffs additional liquidated damages for alleged violations of the West Virginia Act. Finally, in its Order of February 16, 1983, the court awarded plaintiffs prejudgment

---

6. Dillard testified that she picked up the picking tickets twice a day and observed the workers "at least three other times during the day to see what they were doing" (191a). Moreover, Dillard testified that she took notes of what the pickers were doing but failed to retain these notes (192a-93a).

7. The number of hours each plaintiff was credited with in the "Hours Worked" column was frequently less than the total number of "Hours

Offered." The difference is the number of hours Dillard, based on her observations, estimated that plaintiffs were not working. *See supra* note 6 and accompanying text.

8. The court apparently based the $3.62 per hour figure on the Clearance Order circulated by Tri-County. The minimum wage provision, 29 U.S.C. § 206(a)(5), required Tri-County to compensate plaintiffs at $3.35 per hour.

interest of 6% on that portion of the plaintiffs' award representing wages due.

Subsequent to the district court's Memorandum Opinion and Order of February 16, 1983, and in compliance with that Opinion and Order, plaintiffs filed a motion for an award of attorneys' fees under the FLSA, 29 U.S.C. § 216(b). The affidavits detailed 167.9 hours of work by Arthur N. Read (69a), who sought $100. per hour, and 176.2 hours by Garry G. Geffert, who sought $90. per hour. The court disallowed approximately 81% of the attorneys' time and ruled that $80. per hour was reasonable compensation for Mr. Read and $65. per hour was proper compensation for Mr. Geffert.[9] After calculating a lodestar rate by multiplying the hours found to be compensable times each of the foregoing rates, the district court applied a negative multiplier of 50% to reduce the lodestar rate. The court reasoned that the case was neither factually nor legally complex (150a) and "was not the most efficiently handled and was unduly adversarial which may have increased its overall cost to all the parties concerned" (151a).

We turn first to the claims initiated under the FLSA.

## II.

The minimum wage section of the FLSA provides that employers must pay employees employed in agriculture the minimum wage rate then in effect.[10] 29 U.S.C. §§ 206(a)(5), (a)(1). The FLSA further provides that "[a]ny employer who violates the provisions of section 206 ... of this title shall be liable to the ... employees affected in the amount of their unpaid minimum wages, ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 11 of the Portal-to-Portal Act, 29 U.S.C. § 260, provides that if the employer can show the violation of section 6 was in good faith and reasonable, the district court has the discretion to award no

liquidated damages or a lesser amount. *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1149 (3d Cir.1983); *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982); *Rothman v. Publicker Industries*, 201 F.2d 618, 620 (3d Cir.1953).

The district court found that the defendant failed to pay each plaintiff the minimum wage rate for all hours worked and, consequently, was liable to the plaintiffs for the amount of the unpaid minimum wages. 29 U.S.C. § 216(b). The court, however, refused to award plaintiffs the liquidated damages provided for in section 16(b). For the reasons set forth below, we affirm the district court's decision to award plaintiffs unpaid minimum wages but remand the district court's denial of liquidated damages for reconsideration.

### A.

Regulations promulgated pursuant to section 11(c) of the FLSA require Tri-County to keep a primary set of records, which includes the "[h]ours worked each workday," 29 C.F.R. § 516.2(a)(7), and supplementary records, which include the "daily starting and stopping time of individual employees." 29 C.F.R. § 516.6(a)(1). The purpose of these regulations is to insure that each employee at least receives the minimum wage rate for each hour worked. The employer presumably would utilize the starting and stopping times to calculate hours worked and then multiply hours worked by the minimum wage rate to determine an employee's gross pay.

Tri-County, however, developed its own system for calculating hours worked and an employee's pay, a system that violated the FLSA in at least two respects. First, although Tri-County's records reveal spaces for the required "Time Started" and "Time Ended" entries and therefore appear to satisfy the regulations, John Porterfield, president of Tri-County and vice president of Porterfield Orchards, testified that these

---

**9.** The court also compensated Mr. Geffert at $25.00 per hour, the paralegal rate, for work performed subsequent to September 22, 1982.

**10.** During the period involved in this litigation, the minimum wage rate was $3.35 per hour. 29 U.S.C. § 206(a)(1).

entries show only those hours between which work was offered to employees. Instead of using these entries to calculate the number of hours each employee worked, Tri-County estimated the number of hours each employee worked.[11] Estimating hours worked, however, violates section 11(c) of the FLSA, 29 U.S.C. § 211(c), which requires employers to maintain accurate records to ensure that all workers are paid the minimum wage for every hour worked. *Wirtz v. Williams*, 369 F.2d 783, 785 (5th Cir.1966). Tri-County's records, therefore, fail to satisfy the requirements established by the FLSA. Second, Tri-County's records were inaccurate and, therefore, violated the Act because, as the district court found, Tri-County failed to record instruction periods as hours worked and deducted hours for lunch breaks that plaintiffs did not take.

■ In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S.Ct. 1187, 1191–93, 90 L.Ed. 1515 (1946), the Court considered, *inter alia,* how an employer's failure to keep accurate records affects its obligation to abide by the minimum wage requirements of section 6 of the FLSA. The Court determined that an employee should not be penalized and an employer benefitted by the employer's failure to comply with its duty under section 11(c) to maintain accurate records. *Id.* The Court recognized that the employee has "... the burden of proving that he performed work for which he was not properly compensated. The remedial nature of [section 16(b) of the FLSA] and the

great public policy which it embodies, however, militate against making that burden an impossible hurdle for the employee."

*Id.* at 687, 66 S.Ct. at 1192. Once an employee establishes that the employer's records are inadequate, the employee need only introduce enough evidence to support a reasonable inference of hours worked. *Id.* The burden then shifts to the employer to come forward with evidence to negate "the inference to be drawn from the employee's evidence." *Id.* at 687–88, 66 S.Ct. at 1192–93.

■ In the instant case, plaintiffs and their crew leader, Mary Wesley, testified to the number of hours each plaintiff worked.[12] This testimony supports a reasonable inference of hours worked and, under *Anderson,* is sufficient to shift the burden to Tri-County to negate such inference.[13] In this case, Tri-County has failed to come forward with sufficient evidence to nullify this inference. Accordingly, we hold that the district court properly determined that Tri-County must pay plaintiffs guaranteed minimum hourly wages for the hours which they have shown they worked.

### B.

■ As noted above, section 11 of the Portal-to-Portal Act provides employers with a defense to the otherwise mandatory liquidated damage provision of section 16(b) of the FLSA and permits the district court, "in its sound discretion," to award no, or less, liquidated damages. 29 U.S.C. § 260.[14] Before the district court may ex-

---

11. *See supra* notes 5–7 and accompanying text.

12. For Mary Wesley's testimony, see 240(a)–254(a); for plaintiffs' testimony, see 171(a), 276(a), 329(a), 357(a).

13. Defendant erroneously contends that no case has permitted the testimony of plaintiffs to satisfy the burden *Anderson* imposes on the employees. *See Marshall v. Van Matre*, 634 F.2d 1115, 1119 (8th Cir.1980); *Mitchell v. Williams*, 420 F.2d 67, 70–71 (8th Cir.1969). Moreover, in a case such as this one, where the employees are migrant farm workers, it is difficult to imagine what other evidence the defendant would require plaintiffs to produce.

14. Section 11 of the Portal-to-Portal Act provides in pertinent part:
    "In any action commenced ... to recover unpaid minimum wages, ... or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."
    29 U.S.C. § 260.

ercise its discretion under the Portal-to-Portal Act to relieve an employer from liability for liquidated damages, the employer has the *"plain and substantial* burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict" (emphasis added). *Brunner,* 668 F.2d at 753 (citing *Rothman,* 201 F.2d at 620); *see also Lady Jane,* 722 F.2d at 1149.

The court in *Brunner* further defined the two-fold requirement of good faith and reasonableness that the employer must fulfill before it can assert the Portal-to-Portal Act defense. The good faith requirement is a subjective one that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." *Brunner,* 668 F.2d at 753; *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 465 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978). The reasonableness requirement imposes an objective standard by which to judge the employer's conduct. *Brunner,* 668 F.2d at 753; *Laffey,* 567 F.2d at 465. Ignorance alone will not exonerate the employer under the objective reasonableness test. *Brunner,* 668 F.2d 753 (citing *Barcellona v. Tiffany English Pub,* 597 F.2d 464, 468–69 (5th Cir.1979)).

If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages. *Brunner,* 668 F.2d 753; *Laffey,* 567 F.2d at 465; *Richard v. Marriott Corp.,* 549 F.2d 303, 305–06 (4th Cir.), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977); *McClanahan v. Mathews,* 440 F.2d 320, 322 (6th Cir.1971); *Rothman,* 201 F.2d at 620. Furthermore, "[t]he district court must make findings as a 'prerequisite to the invocation of its discretion,' ... that

the employer acted in good faith and with reasonable grounds." *Lady Jane,* 722 F.2d at 1149 (citing *Brunner,* 668 F.2d at 753).

In light of the foregoing principles and the current record, we have concluded that plaintiffs are correct in asserting that they are entitled to liquidated damages under the FLSA.[15] The district court found that Tri-County satisfied the good faith requirement for two reasons: first, Tri-County's payroll system enabled employees to raise any complaints about their pay; and second, Tri-County did not intentionally violate the Act. Neither of the district court's reasons satisfies the *plain and substantial burden* that *Brunner* imposes on employers seeking to escape liability for liquidated damages under 29 U.S.C. § 216(b). The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute. *Laffey,* 567 F.2d at 465. Moreover, the employee need not establish an intentional violation of the Act to recover liquidated damages. Instead, the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements. The record is silent as to any efforts Tri-County made to ascertain and follow the dictates of the FLSA. *See Lady Jane,* 722 F.2d at 1149; *Brunner,* 668 F.2d at 748.

Plaintiffs also contend that the record does not satisfy the reasonableness requirement of section 11 of the Portal-to-Portal Act. The district court stated "[w]e are satisfied that the defendant's violation was based on reasonable grounds ..." (39a), without giving any reasons for this determination. Section 11 requires the district court to "make findings as a 'prerequisite to the invocation of its discretion' ...." *Lady Jane,* 722 F.2d at 1149 (quoting

---

**15.** The determination of good faith and reasonableness is one of ultimate fact and a review by this court "entails an examination for legal error." *Smith v. Harris,* 644 F.2d 985, 990 (3d Cir.1981) (Aldisert, J., concurring). *But see Laffey,* 567 F.2d at 464.

*Brunner,* 668 F.2d at 753).[16] The district court has made no such findings in this case.

Since we have not found record support for a determination that the defendant acted in good faith and that it had a reasonable basis for believing its actions complied with the minimum wage provisions, we remand the liquidated damages issue to the district court for reconsideration.[17]

### III.

Having determined that the defendants violated the minimum wage provisions of the FLSA, we turn to the plaintiffs' contentions under the FLCRA. The FLCRA was passed in an effort to protect migrant and seasonal farm workers from exploitation "by certain irresponsible contractors" who, *inter alia,* cheated on payroll plans or disseminated false information about the terms, conditions, or even the existence of agricultural employment. 7 U.S.C. §§ 2041, 2045(e) (repealed 1983). *See, e.g., Donovan v. Marrero,* 695 F.2d 791, 792–93 (3d Cir.1982); *Mountain Brook Orchards v. Marshall,* 640 F.2d 454, 457–58 (3d Cir. 1981). To effectuate its purposes, Congress devised a comprehensive regulatory scheme that imposed numerous requirements on Farm Labor Contractors.[18] The FLCRA permits "[a]ny person claiming to

be aggrieved by the violation of any provision of this Act or regulation prescribed hereunder" to commence suit in the United States district courts, 7 U.S.C. § 2050a(a), and permits district courts to award damages to migrant farm workers when the court finds that the contractors intentionally violated any provision of the Act. *Id.* at § 2050a(b).[19] The district court determined that the defendant violated section 2045(e) of the FLCRA in three respects and awarded each plaintiff $500. for each violation. The court also rejected several other alleged violations of other sections of the FLCRA that plaintiffs asserted; three of these have been raised in this appeal.

### A.

First, section 2045(e) of the FLCRA required defendant Tri-County to provide to each migrant worker "a statement of all sums paid to him (including sums received on behalf of such migrant worker) on account of the labor of such migrant worker." 7 U.S.C. § 2045(e). It is undisputed that Tri-County failed to provide to plaintiffs the amounts it received from Porterfield Orchards. John Porterfield, vice president of Porterfield Orchards and president of Tri-County Growers, testified in his deposition conducted September 28, 1982, that Porterfield Orchards compen-

16. In *Lady Jane,* the court stated:
   "Under 29 U.S.C. § 260, the court has discretion to award no, or less, liquidated damages, but only if the employer satisfies his burden of proof that he acted in good faith and with reasonable grounds for believing he was not violating the Act. *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982). The district court must make findings as a 'prerequisite to the invocation of its discretion,' *id.,* that the employer acted in good faith and with reasonable grounds."
   722 F.2d at 1149 (footnote omitted).

17. We note that on remand the district court should consider whether Tri-County's failure to compensate employees for orientation periods and lunch breaks are indicative of good faith and reasonableness. Moreover, the court should make its determination in light of the plain and substantial burden *Brunner* imposes on employers.
   Tri-County sets forth in its brief very vague references to prior audits and informal investi-

gations by the Department of Labor which failed to find record-keeping violations. Perhaps if Tri-County had documented this assertion with references to the record, our conclusion would be different, but Tri-County has included no such documentation in the record, the briefs, or in oral argument before this court.

18. It is undisputed that Tri-County is a Farm Labor Contractor within the meaning of the FLCRA and, therefore, is subject to its provisions.

19. The Act provides in pertinent part:
   "(b) ... If the court finds that the respondent has intentionally violated any provision of this Act or any regulation prescribed hereunder, it may award damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief...."
   7 U.S.C. § 2050a(b).

sated Tri-County 19 cents per box for services rendered by plaintiffs (487a–489a). Tri-County, however, never revealed to the plaintiffs that it was receiving 36 cents plus 19 cents for each box of fruit that each worker picked (489a). Because Tri-County failed to provide the plaintiffs with a statement of these sums, which were received on behalf of such migrant workers, as required by statute, the district court correctly determined that Tri-County violated this provision of 7 U.S.C. § 2045(e). *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir.1983).

■ Second, section 2045(e) of the FLCRA required Farm Labor Contractors to keep payroll records which

"... show for each worker total earnings in each payroll period, all withholdings from wages, and net earnings. In addition, for workers employed on a time basis, the number of units of time employed and the rate per unit of time shall be recorded on the payroll records, and for workers employed on a piece rate basis, the number of units of work performed and the rate per unit shall be recorded on such records."

7 U.S.C. § 2045(e). The district court found, and we agree, that Tri-County's records were deficient. As discussed more fully above, the defendant failed to properly record all the hours worked by the plaintiffs but instead relied on the intermittent observations of Joan Dillard, John Porterfield, and Boyd Brown. Consequently, the hours recorded for each plaintiff did not accurately reflect the hours worked. We therefore affirm the district court determi-

nation that defendant failed to maintain accurate payroll records and thereby committed a second violation of 7 U.S.C. § 2045(e).

■ Third, section 2045(e) requires Farm Labor Contractors to provide to the grower "to whom any migrant worker is furnished all information and records required to be kept by such contractor ... and all information required to be provided to any migrant worker under this subsection." 7 U.S.C. § 2045(e). Porterfield testified that Tri-County did not provide Porterfield Orchards with any records other than Tri-County's payroll computation sheet. As the district court correctly found, "[t]his sheet does not include such information as tax deductions or deductions for meals, both of which are required records under the subsection" (50a). Accordingly, we affirm the district court's determination that Tri-County failed to provide the grower with copies of all records it was required to keep and thereby committed a third violation of 7 U.S.C. § 2045(e).[20]

### B.

■ On appeal, plaintiffs contend that the district court erred by failing to find that Tri-County gave false and misleading information concerning the terms and conditions of employment in two respects and thereby violated 7 U.S.C. § 2044(b)(2). Moreover, plaintiffs contend that defendant violated section 2044(b)(4) because it failed to comply with its working agreement with the plaintiffs.[21] Plaintiffs contend that the defendant gave "false and misleading information" to the plaintiffs because the

**20.** Defendant's contention that plaintiffs never sought to elicit evidence that any member of Tri-County had been "denied disclosure or access" to relevant materials is irrelevant. Section 2045(e) of the FLCRA placed an affirmative obligation on the Farm Labor Contractor to "provide" the information to the grower. *See* 7 U.S.C. § 2045(e); 29 C.F.R. § 40.51(1) ("farm labor contractor *shall* provide....") (emphasis added).

**21.** The relevant provisions of section 2044(b) provide:

"(b) Upon notice and hearing in accordance with regulations prescribed by him, the Secretary may refuse to issue, and may suspend,

revoke, or refuse to renew a certificate of registration to any farm labor contractor if he finds that such contractor—

\*  \*  \*  \*  \*  \*

"(2) knowingly has given false or misleading information to migrant workers concerning the terms, conditions, or existence of agricultural employment;

\*  \*  \*  \*  \*  \*

"(4) has failed, without justification, to comply with the terms of any working arrangements he has made with migrant workers; ...."

Clearance Order and an orientation presentation of Russell Pitzer, the general manager of Tri-County, represented that "an average picker should average 85, 1⅛ bushels" (85 boxes) per day (548a). Defendant allegedly omitted to inform plaintiffs that because of a frost the size of the crop had been reduced by approximately 50% (494a) and that many workers were able to harvest only 60 to 65 boxes per day. The undisputed evidence in the record reveals that, although some workers could harvest only 60 to 65 boxes per day, other workers picked as many as 100 boxes per day. Consequently, we conclude that the defendant's representation that an average worker should average 85, 1⅛ bushels (85 boxes) per day was not misleading. Accordingly, we affirm the district court's determination that the defendant's representation did not constitute a violation of section 2044(b)(2).

In addition, plaintiffs contend that defendant committed another violation of section 2044(b)(2) because it knowingly misrepresented that it would guarantee each plaintiff $3.62 for each hour of work and a violation of section 2044(b)(4) because it failed, without justification, to comply with the terms of its working agreement with plaintiffs. According to plaintiffs, Tri-County gave "false and misleading information" and failed to comply with its agreement because Tri-County paid plaintiffs at the piece rate for the apples they were able to pick even though that rate was less than the $3.62 per hour guarantee. Plaintiffs primarily rely on the same evidence, evidence that the district court excluded, to support these two alleged violations of section 2044(b). They argue that a statement recorded in a United States Department of Labor investigation file and attributed to Russell Pitzer, an agent of Tri-County demonstrates that the defendant violated both subsections of section 2044(b).[22] Before determining the validity of plaintiffs' contentions, we must examine the district court's evidentiary ruling.

■ We agree with plaintiffs' contention that the district court erroneously excluded that portion of the investigative report that included Pitzer's alleged statement. Initially, we note that the alleged statement of Pitzer recorded in the Department of Labor report involves two potential hearsay problems. First, we must determine whether the report is admissible; second, we consider whether the statement of Pitzer, included therein, may be offered for the truth of the matter asserted. *See* Fed. R.Evid. 805 ("Hearsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."); E. Cleary, *McCormick on Evidence* 911–12 (3d ed. 1984).

We find that the district court erroneously excluded the report. As the Fifth Circuit stated in *Hodge v. Seiler*, 558 F.2d 284, 288 (5th Cir.1977) (quoting *Smith v. Universal Services, Inc.*, 454 F.2d 154, 158 (5th Cir.1972)),

"The report involved in the instant case was prepared by an investigator for the [Department of Labor], pursuant to its statutory mandate, and was not prepared in anticipation of litigation. The [Department] is not a party to the litigation and can have no interest therein. The inves-

---

**22.** In the three-page report, duly certified as "a true and accurate copy of the report" (544a), the Department of Labor investigators determined that Tri-County had failed to pay certain employees the minimum wage. In response to a question on whether Tri-County planned to make restitution, the investigators reported that "Mr. Pitzer stated that the Board [of Directors of Tri-County] had refused to make restitution as it was their position the employees had been paid piece work wages by agreement between the parties concerned and nothing more was due" (547a). The district court determined that the report did not satisfy the safeguards assumed by Rule 803(8), which provides for the admission of public records and reports, as an exception to the rule prohibiting the admission of hearsay evidence. Fed.R.Evid. 802, 803(8). The court did not address plaintiffs' contention that the report was an admission by a party-opponent and, therefore, was not hearsay. Fed.R.Evid. 801(d)(2)(D).

Plaintiffs also argue that defendant, in its appellate brief, concedes that it paid plaintiffs piece rate wages, rather than by the hour. *See* defendant's brief at 35 n. 18, 36.

tigator had no personal involvement in the situation. There is no reason to suspect any lack of trustworthiness."

Moreover, the statement attributed to Russell Pitzer was recorded as made. It was, therefore, very similar to an observation and did not involve the investigator's conclusions. *Compare* Fed.R.Evid. 803(8)(B) *with* Fed.R.Evid. 803(8)(C). Finally, admitting the report would satisfy the underlying policy of Rule 803(8)

> "to avoid the disruptive effect of bringing busy public officials into court to testify as to matters that, as a general rule, have been thoroughly, accurately and reliably reported and recorded, with a resultant great saving of time resources and public funds."

Fed.R.Evid. 803(8) advisory committee note.[23] Turning to the hearsay nature of the statement included in the report, we find that it too satisfies the hearsay rules. Under Fed.R.Evid. 801(d)(2)(D), the statement is not hearsay and, therefore, not subject to the exclusionary rule of Fed.R. Evid. 802. Accordingly, we find that the district court should have admitted the investigative report.[24]

▮ Our review of the record, including that portion erroneously excluded, persuades us that the defendant "failed, without justification, to comply with the terms. of [the] working arrangements [it] ha[d] made with migrant workers" and thereby violated section 2044(b)(4) of the FLCRA. The Clearance Order states unequivocally that "Workers ... will be paid ... 32 [cents] per 2150.40 cu. in. box or 36 [cents] per 2400 cu. in. box with guarantee of 3.62 per hour ...." (27a, ¶¶ 4, 5, 548a). As set forth in section II–A of this opinion, the

employer failed to comply with this term of its agreement with plaintiffs. In light of the remedial purposes of the FLCRA, we disagree with the district court's finding that the proffered justification, defendant's method of calculating hours worked (145a), insulates this conduct. Accordingly, we reverse the district court on this issue.

We are unconvinced, however, that the plaintiffs are entitled to recover for a violation of section 2044(b)(2). The record fails to show that defendant knowingly gave false or. misleading information concerning the terms of employment. Instead, the evidence establishes that defendant's record-keeping system was deficient and that the defendant did not credit plaintiffs with the correct number of hours worked. The defendant's incorrect interpretation of the FLSA and the regulations promulgated thereunder does not rise to the level of an intentional violation of section 2044(b)(2). Accordingly, we affirm the district court on this issue.

### C.

In its Memorandum Opinion and Order of February 16, 1983, the district court correctly determined that the defendant violated section 2045(e) in three respects. *See supra* part III–A. Moreover, the district court correctly determined that, although only one subsection of the FLCRA was violated, the defendant committed three separate violations each of which, if intentional, would entitle each plaintiff to "damages up to and including an amount equal to the amount of actual damages, or $500 for each violation, or other equitable relief." 7 U.S.C. § 2050a(b). We also agree

---

**23.** *Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3d Cir.1977), does not necessitate a different result. In *Bacharach Instrument,* this court considered whether a determination letter, issued after an *ex parte* examination that found there was reasonable cause to believe the defendant had violated title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* was properly excluded by the district court. The court held that under Fed.R.Evid. 403, the district court did not abuse its discretion. In this case, the concerns of the court in *Bacharach Instrument* are absent. First, the statement

plaintiffs seek to introduce into evidence is a statement of an officer of Tri-County; it is not a determination that the investigators reached after considering and weighing the facts. Second, because this case involves a bench trial, there is no chance that a jury could be misled.

**24.** We note that the defendant had ample opportunity to question Pitzer about the statement. Its failure to do so cannot be invoked to exclude that portion of the report attributed to Pitzer.

with the district court's determinations that the term "intentional" in section 2050a(b) "establishes that the requisite intent is general rather than specific ..." (52a), that the defendant's violations were intentional, and that plaintiffs were entitled to recover damages under section 2050a(b). *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir.1983); *Alvarez v. Joan of Arc, Inc.*, 658 F.2d 1217, 1224 (7th Cir.); *Castillo v. Givens*, 704 F.2d 181, 197–98 (5th Cir.1983).

■ We disagree, however, with the district court's conclusion that finding a violation required the court to award either actual damages or $500. for each violation. Instead, our review of the cases since *Espinoza v. Stokely-Van Camp, Inc.*, 641 F.2d 535 (7th Cir.1981), *overruled by Alvarez*, 658 F.2d at 1221, and the legislative history of the FLCRA[25] persuades us that the district court may award liquidated damages of *up* to $500. Accordingly, on remand, the district court should consider whether an award of less than the statutory maximum of $500. for each of the four

violations of the FLCRA would serve the remedial policies underlying the FLCRA.[26]

## IV.

We next address plaintiffs' contention that the district court erred by not awarding plaintiffs liquidated damages as provided by section 21–5–4(e) of the West Virginia Wage Payment and Collection Act. The WPCA requires an employer to pay an employee all wages due no later than the next regular payday if the worker quits, or within 72 hours of termination if the employee is fired. W.Va.Code §§ 21–5–4(b) & (c). If the employer fails to pay all wages due within the required time, the employer becomes subject to liquidated damages in the amount of a day's wages for·each day the employer fails to pay, up to 30 days.[27] W.Va.Code § 21–5–4(e).

■ The district court found that Tri-County failed to pay each plaintiff all wages due within the period required by the WPCA. Nevertheless, the court did not award plaintiffs liquidated damages under section 21–5–4(e) of the West Virginia Code.[28] When interpreting state statutes,

---

**25.** *See* S.Rep. No. 93–1295, 93d Cong., 2d Sess., *reprinted in* 4 U.S.Code Cong. & Admin.News, 6441, 6450 (1974) (court "may award damages up to $500 for each violation"). *See also Washington v. Miller*, 721 F.2d 797, 803 (11th Cir. 1983); *Castillo v. Givens*, 704 F.2d at 197 & n. 37.

**26.** We note that our interpretation of section 2050a(b) is made with the benefit of intervening congressional action. Since the district court made its determination, Congress has replaced the FLCRA with the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–1872 (the "MSPA"). Section 1854(c)(1) of the MSPA replaces section 2050a(b), the governing statute at the time of these violations. Section 1854(c)(1) clarifies the ambiguity by explicitly permitting the district court to award damages of "up to $500." 29 U.S.C. § 1854(c)(1).

**27.** The West Virginia Code provides in relevant part:

"Whenever a person, firm or corporation discharges an employee, such person, firm or corporation shall pay the employee's wages in full within seventy-two hours." W.Va.Code § 21–5–4(b).

"Whenever an employee quits or resigns, the person, firm or corporation shall pay the

employee's wages no later than the next regular payday ...." W.Va.Code § 21–5–4(c).

"If a person, firm or corporation fails to pay an employee wages as required under this section, such person, firm or corporation shall, in addition to the amount due, be liable to the employee for liquidated damages in the amount of wages at his regular rate for each day the employer is in default, until he is paid in full, without rendering any service therefor: Provided, however, that he shall cease to draw such wages thirty days after such default." W.Va.Code § 21–5–4(e).

**28.** The district court denied liquidated damages because it found no case which held an employer liable for liquidated damages under the WPCA where the employer consistently maintained that it paid the employee in full. A West Virginia trial court decision addressing this issue was decided after the district court ruling. *Mills v. Hollis-Lowman Sales Services, Inc.*, 101 Lab.Cas. ¶ 34,556 (Cir.Ct. of Berkely County, W.Va., 1984). The court in *Mills* held an employer liable despite the fact that the employer believed it did not owe the employee the money outstanding. In addition to having the benefit of *Mills*, we are afraid that the district court's reading of the statute could lead to abuse by employers who consistently maintain that they

we look for guidance to applicable state court decisions. After careful consideration of relevant West Virginia case law, including the policy considerations underlying the West Virginia Act, we conclude that the district court erred by not awarding plaintiffs liquidated damages as provided for in W.Va.Code § 21–5–4(e).

The West Virginia Supreme Court discussed the strong policy concerns underlying the WPCA in *Mullins v. Venable*, 297 S.E.2d 866 (W.Va.1982), and *Farley v. Zapata Coal Corp.*, 281 S.E.2d 238 (W.Va. 1981). In *Venable*, the court stated: "[w]ages have traditionally been afforded special protection under the law, in recognition that working people depend on wages to furnish the basic necessities of life ...." *Venable*, 297 S.E.2d at 871. In *Zapata*, the court stated: "[w]orking people should not have to resort to lawsuits to collect wages they have earned. When, however, resort to such action is necessary, the Legislature has said that they are entitled to be made whole by the payment of wages [and] liquidated damages ...." *Zapata*, 281 S.E.2d at 281.

A West Virginia trial court in two recent cases, *Mills v. Hollis-Lowman Sales Service, Inc.*, 101 Lab.Cas. ¶ 34,556 (Cir.Ct., Berkely County, W.Va.1984), and *Ronald Domer v. Beallair Orchards, Inc.*, 100 Lab.Cas. ¶ 34,513 (Cir.Ct., Berkely County, W.Va.1984),[29] applied the relevant West Virginia Code sections. In both cases, the trial court concluded that *Lucas v. Moore*, 303 S.E.2d 739 (W.Va.1983),[30] stood for the proposition that the liquidated damages

provision of the West Virginia Code is in the nature of a contractual remedy and "is part of the agreement between every employer and employee in West Virginia." *Mills*, 101 Lab.Cas. at 46,273; *Domer*, 100 Lab.Cas. at 46,104. Accordingly, the West Virginia trial court in both cases determined that once an employee establishes that he was not paid in full, the employer is liable for liquidated damages under W.Va. Code § 21–5–4(e). *Mills*, 101 Lab.Cas. at 46,273; *Domer*, 100 Lab.Cas. at 46,104.

In light of the policies articulated by the West Virginia Supreme Court and the West Virginia trial court's interpretation of the West Virginia Act as described above, we are persuaded that strict application of the statute is warranted. Accordingly, we conclude that because plaintiffs were not paid their wages in full within the statutorily required time limit, the plaintiffs are entitled to the statutory liquidated damages provided for by W.Va.Code § 21–5–4(e).

## V.

Having addressed the substantive issues raised in this appeal, we turn to plaintiffs' contention that the district court improperly calculated the amount of attorneys' fees. After the conclusion of the trial on the merits, plaintiffs' attorneys, Mr. Read of Philadelphia, Pa., and Mr. Geffert of Martinsburg, West Virginia, filed a motion for attorneys' fees. Read and Geffert sought compensation for all hours expended on the case for the period from October 1981 through the end of the litigation.[31] Read

---

paid employees in full and thereby avoid being liable for liquidated damages.

**29.** *Domer* also was decided subsequent to the district court's opinions in this case. Also, by letter of August 23, 1984, counsel for Tri-County has advised the court that no order has been entered in *Domer* and final decision in that case is "still pending."

**30.** The West Virginia Supreme Court in *Lucas*, 303 S.E.2d 739, considered whether a suit brought under West Virginia Code § 21–5–4(e) was governed by a contract or a civil statute of limitations. The court concluded that because "the legislature intended discharged employees to have access to [the] statutory remedy as if

under contract," the contract statute of limitations was applicable. *Id.* at 741.

**31.** Section 216(b) of Title 29 provides in relevant part:

"The court in such action [commenced pursuant to section 206 of the FLSA] *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (Emphasis added.)

29 U.S.C. § 216(b). Under section 16(b) of the FLSA, attorneys' fees are mandatory. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 261 n. 34, 95 S.Ct. 1612, 1623 n. 34, 44 L.Ed.2d 141 (1975); *Rodriguez v. Taylor*, 569

sought $100.00 per hour for 167.9 hours and Geffert sought $90.00 per hour for 176.2 hours; their fee requests totalled $32,648.[32]

Disturbed by the disproportionality between the judgment and the requested attorneys' fees, its strong feeling that the case was not the most efficiently handled, and its feeling that the litigation was unduly adversarial, the court awarded both attorneys a total of $1931. The court compensated Read for 28.7 hours at $80.00 per hour for his work on the FLSA claims and then applied a 50% negative multiplier. The court compensated Geffert for 16.4 hours at $65.00 per hour and for 20 hours at a paralegal rate of $25.00. Again the court applied a 50% negative multiplier.[33] Because of both our disposition of the plaintiffs' claims under the West Virginia Wage Payment and Collection Act and intervening decisions by the Supreme Court and the Third Circuit not available to the district court on the dates of its determinations, we remand the case for redetermination of the fee awards.

■■■ We emphasize that the award of reasonable attorneys' fees is within the discretion of the district court. *Rodriguez v. Taylor*, 569 F.2d 1231, 1247 (3d Cir.1977) (citing cases), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).

"The exercise of such discretion must, however, conform to proper standards and procedures. The failure of a trial court to adhere to generally applicable rules and criteria may constitute a 'misuse' of discretion unentitled to the appellate court deference generally accorded factually oriented calculations by a trial judge."

*Id.* (citing cases). In the instant case, the plaintiffs contend that the district court abused its discretion because the court failed to consider the interrelated nature of the claims (plaintiffs' brief at 35–37).[34]

One day prior to the district court decision, the Supreme Court decided *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Since the district court decision, this court has interpreted *Hensley* in *Inmates of Allegheny County Jail v. Pierce*, 716 F.2d 177, 180–81 (3d Cir.1983), *Danny Kresky Enterprises Corp. v. Magid*, 716 F.2d 215, 217 (3d Cir.1983), and *Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 595 (3d Cir. 1984). In *Hensley*, the Supreme Court considered "whether a partially prevailing plaintiff [could] recover an attorney's fee for legal services on unsuccessful claims" under 42 U.S.C. § 1988.[35] The Supreme Court rejected petitioner's contention that "only time reasonably expended in support of successful claims should be compensat-

F.2d 1231, 1244 (3d Cir.1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978).

**32.** Plaintiffs now concede that 6.2 hours of Read's time and 6.1 hours of Geffert's time should be disallowed because these hours were spent on matters unrelated to defendant's record-keeping system.

**33.** The plaintiffs apparently do not challenge the district court's determination that $85.00 per hour was a reasonable rate for attorney Read and $65.00 per hour a reasonable rate for attorney Geffert.

**34.** We disagree with plaintiffs' additional contention that "[t]he heart of the District Court's award was the insistence that the fee awarded be proportionate to the underlying judgment." In its opinion, the court noted that it was disturbed by the disproportionality of the amount of attorneys' fees sought, $32,648., and the total judgment awarded the five migrant farm work-

ers under the FLSA, $369.94 (149a). Although the relationship between the fee award and the amount of recovery is a proper consideration by the court, *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983); *see Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983), our review of the district court's Memorandum Opinion and Order of May 17, 1983, reveals no evidence that the court ever insisted on a proportional relationship between the two. Rather than requiring a proportionate award, the district court based its determination on the inefficient handling of the case by plaintiffs' attorneys, their unduly adversarial conduct of the case, the duplicative effort expended, and the court's belief that the FLSA claims, for which compensation was required, comprised only one-third of the litigation.

**35.** Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988.

ed." *Hensley*, 103 S.Ct. at 1939–43. Instead, the Court adopted a pragmatic approach. The Court stated:

"Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. [Citing case.] Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters."

*Id.* at 1940.

Initially, we recognize that *Hensley* arose in the civil rights context and that, under 42 U.S.C. § 1988, prevailing parties are entitled to recover a reasonable attorney's fee. The issue in *Hensley* was distinguishing claims on which the plaintiff was the prevailing party from those on which he was not. Unlike *Hensley*, this case involves claims brought pursuant to three statutes, only two of which provide for attorneys' fees. This case is similar to

*Hensley*, however, because the district court attempted to allocate the attorneys' time to the statute under which each claim was raised. *Hensley*, therefore, is instructive.

Like *Hensley*, this case involves "a common core of facts" and is "based on related legal theories." *Id.* As the Supreme Court noted, "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.* Moreover, "[t]here is no precise rule or formula," *id.* at 1941, for determining the amount of lawyers' services spent on prevailing claims and there is no precise rule or formula for determining the amount of lawyers' services spent on claims raised under different statutes. In such situations, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded ...." *Id.* at 1943; *see Brinegar*, 741 F.2d 584 (3d Cir.1984), at 595; *Pierce*, 716 F.2d at 180.

The district court compensated the attorneys for one-third of the hours they expended prior to September 22, 1982, at which time the judge believed that the attorneys knew the amount of most of the FLSA claims and were able to assess that part of the litigation.[36] The court then awarded Read 10% of the time spent subsequent to September 22 as an estimate of the amount of hours spent on FLSA claims. Such an approach appears contrary to the precepts established in *Hensley* and interpreted in *Pierce* because it fails to consider the interrelated nature of the lawsuit as a whole. Accordingly, we remand to enable the district court to consider the interrelated nature of the FLSA and the FLCRA claims. Because of our disposition of the

---

**36.** The district court may have eliminated two-thirds of their time because it related to FLCRA and West Virginia wage claims.

substantive claims initiated pursuant to West Virginia law, *see supra* part IV, and because W.Va.Code § 21–5–12(b) authorizes recovery of attorneys' fees in actions initiated to enforce those substantive claims, the district court should consider on remand the interrelated nature of the West Virginia law claims as well.[37]

In summary, the district court should reconsider its attorneys' fees decision in the light of the following factors:[38]

A. The recent decisions of the appellate courts which were not available to the district court on or before May 17, 1983.

B. The interrelated and overlapping nature of the issues in this lawsuit, including the West Virginia law claims.

C. The apparent lack of record support for the district court's statement in its May 17, 1983, opinion that the court "strongly feels that this case was not the most efficiently handled and was unduly adversarial, which may have increased its overall cost to the parties concerned" (150–51a).

## VI.

Accordingly, we vacate the district court's orders of February 16, 1983, and May 17, 1983, and remand for further proceedings consistent with this opinion.

---

**37.** The West Virginia Code provides, "[t]he court in any action brought under this article may, in the event that any judgment is awarded to the plaintiff or plaintiffs, assess costs of the action, including reasonable attorney fees against the defendant." W.Va.Code § 21–5–12(b). In *Zapata*, 281 S.E.2d 238, the West Virginia Supreme Court interpreted this provision to require that "costs, including attorney fees, should be awarded to prevailing plaintiffs as a matter of course in the absence of special circumstances which would render such an award unjust." Absent the defendant's ability to demonstrate special circumstances, the district court should compensate plaintiffs' attorneys for time spent on the West Virginia claims.

**38.** The district court should reconsider on remand the procedure it followed to calculate the fee awards. The court appears to have calculated the number of hours attorneys Read and Geffert devoted to the FLSA claims prior to September 22, 1982. It then estimated the amount of time Read spent thereafter on this claim and credited Geffert for work as a paralegal, implicitly determining that much of the time Read and Geffert spent was unreasonable. The court then applied a negative multiplier because the case was handled in an inefficient manner and was unduly adversarial. Such an approach appears inconsistent with the standards set forth in numerous Third Circuit decisions.

*Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. (Lindy I),* 487 F.2d 161 (3d Cir.1973), and its progeny require the court to calculate the lodestar amount by multiplying an amount of hours the court deems reasonable times a reasonable rate. *Rodriguez,* 569 F.2d at 1247. Determining the lodestar rate, therefore, already reflects such considerations as "the amount of time spent on various projects [and] the status of individual attorneys ...." *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp. (Lindy II),* 540 F.2d 102, 114 (3d Cir.1976). *See also Hensley,* 103 S.Ct. at 1940 n. 9. After calculating the lodestar rate, the court is authorized to utilize a multiplier to reflect the contingent nature of the litigation. *Silberman v. Bogle,* 683 F.2d 62, 64 (3d Cir.1982). A district court may also increase or decrease the award to reflect the quality of counsel's representation. *Id.* We are unaware, however, of any authority in this circuit that permits the district court to apply a negative multiplier when counsel handles a client's case in an "unduly adversarial" manner, and we reject this explanation as a justification for reducing a fee award.

Furthermore, although we recognize that district courts have a duty to reduce excessive claims for attorneys' fees, such action by the courts must be based on identifiable facts in the record. The district court has not pointed out, and we have been unable to find, any basis in this record for the court's conclusion that plaintiffs' counsel proceeded in an "unduly adversarial" manner. Judge Higginbotham believes that as a matter of law there is no basis *on this record* to apply the negative multiplier formula.