Lynn MARTIN, Secretary of Labor,
United States Department of Labor

v.

COOPER ELECTRIC SUPPLY CO., a
Corporation, and Richard A. Cooper,
Individually, Appellants,

v.

NATIONAL ASSOCIATION OF WHOLE-
SALER–DISTRIBUTORS, and National
Association of Electrical Distributors,
Amicus–Appellants.

Lynn MARTIN, Secretary of Labor,
United States Department of
Labor, Appellant,

v.

COOPER ELECTRIC SUPPLY CO., a
Corporation, and Richard A.
Cooper, Individually.

Nos. 90–5690, 90–5785.

United States Court of Appeals,
Third Circuit.

Argued March 5, 1991.

Decided Aug. 8, 1991.

Rehearing Denied Sept. 13, 1991.

898

Russell M. Woods (argued), Woods & Trembulak, Cranford, N.J., for appellants/cross-appellees.

William J. Stone (argued), Wendy Bader, U.S. Dept. of Labor, Washington, D.C., for appellee/cross-appellant.

Louis R. Marchese (argued), Halfpenny, Hahn, Roche & Marchese, Chicago, Ill., for amicus-appellant.

Before BECKER, NYGAARD and HIGGINBOTHAM, Circuit Judges.

OPINION OF THE COURT

NYGAARD, Circuit Judge.

These cross-appeals follow a bench trial in which the district court decided that Cooper Electric Supply Co., Inc. and its President, Richard Cooper, (collectively, "Cooper") violated the overtime pay and record keeping provisions of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA" or "Act"). Cooper contends the district court erred by concluding that Coo-

per's inside salespersons were not bona fide "administrative" employees, hence eligible for a statutory exemption from the Act's overtime and record keeping requirements.[1] The Secretary of Labor ("Labor") contends the district court erred by refusing to award liquidated damages on top of compensatory damages for Cooper's violations.

We will affirm the district court's decision that Cooper's inside salespersons are not exempt from the Act's requirements, but will reverse the district court's denial of liquidated damages and vacate the court's award of prejudgment interest.

## I. PROCEDURE

Cooper Electric Supply Co., Inc. is a New Jersey corporation. Its primary business is selling electrical products. Cooper employs approximately 120 people including inside salespersons, counter salespersons, outside salespersons, purchasing agents and various clerical functionaries who handle payroll, receivables and credit.

In 1987, after Labor investigated Cooper's pay practices, it filed this action alleging that since 1985, Cooper had violated the overtime and record keeping provisions of the Act with respect to some of its employees, namely, assistant warehouse managers, computer operators, purchasing agents and inside salespersons. The Act requires that overtime wages, equivalent to one-and-one-half times the regular pay rate, be paid to employees who work in excess of 40 hours per week. *See* 29 U.S.C. § 207.

Labor sought to have Cooper pay outstanding unpaid overtime compensation, and to enjoin Cooper from violating the Act. Pursuant to section 16(c) of the Act, 29 U.S.C. § 216(c), Labor also requested that Cooper pay either liquidated damages in amounts equal to their unpaid compensation, or prejudgment interest.

In the Final Pretrial Order, Cooper stipulated that its assistant warehouse managers and computer operators were not exempt from the Act's record keeping and overtime pay provisions. Accordingly, the district court eventually awarded these employees unpaid overtime compensation and prejudgment interest.

The company took the position that its inside salespersons and purchasing agents were bona fide "administrative" employees, exempt from the Act's overtime pay requirements under section 13(a)(1) of the statute, 29 U.S.C. § 213(a)(1).[2] That section exempts employees occupying "bona fide executive, administrative, or professional" positions from the maximum hour provisions of the FLSA; it also empowers the Secretary of Labor to define the statute's operative terms.

The district court decided Cooper had violated the Act's overtime and record keeping provisions as charged. The court concluded that the employees identified in Labor's complaint were entitled to the overtime pay mandated by the Act. It entered a $74,144 judgment against Cooper equal to the employees' unpaid overtime wages, and awarded them $26,291 in prejudgment interest. The district court did not award the liquidated damages requested by Labor, nor did it permanently enjoin Cooper from violating the Act's overtime pay and record keeping requirements.

The district court applied regulatory interpretations of section 13(a)(1) to determine that Cooper's inside salespersons and purchasing agents were not "administrative" employees eligible for the statutory exemption because they do not perform work "directly related to [Cooper's] management policies or general business operations". The court reasoned that Cooper's inside salespersons are "productive" rather than "administrative" employees

---

1. The National Association of Electrical Distributors and National Association of Wholesaler–Distributors have filed *amicus* briefs in Cooper's appeal. Like Cooper, *amici* argue that Cooper's inside salespersons and similar wholesale sales industry salespeople *do* qualify for the statutory exemption.

2. Cooper asserted also that its inside salespersons and purchasing agents were exempt under section 13(a)(1) as "executive" employees; however, the district found no evidence to support that conclusion, and the point is not contested on appeal.

**900**

within the meaning of 29 C.F.R. § 541.205(a) & (b); and that they do not perform "work of substantial importance" to Cooper's business within the meaning of 29 C.F.R. § 541.205(a) & (c).

Cooper appealed the district court's determination that Cooper's inside salespersons were not "administrative" employees exempt from FLSA overtime pay provisions.[3] Labor appealed the district court's refusal to award liquidated damages. *Amici* joined Cooper's appeal.

## II. EXEMPTION UNDER SECTION 13(a)(1)

### A.

■ We must decide whether the district court erred by concluding that Cooper's inside salespersons are not eligible for section 13(a)(1)'s "administrative" employee exemption from the Act's overtime pay requirements.

■ Whether Cooper's inside salespersons fall within the exemption is a mixed question of law and fact. We review the district court's findings of historical fact under the "clearly erroneous" standard set forth in Federal Rule of Civil Procedure 52(a). *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713–14, 106 S.Ct. 1527, 1529–30, 89 L.Ed.2d 739 (1986). *See also Brock v. Claridge Hotel and Casino*, 846 F.2d 180, 184 (3d Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988) ("We can review the historical facts only for clear error. Whether the district court properly applied these facts to the regulations is a legal question, over which we have plenary review.")

■ Likewise, where the district court was required to draw factual inferences from historical facts in order to apply Labor's regulations under section 13(a)(1), we review those inferences for clear error too. *Walling v. General Industries Co.*, 330 U.S. 545, 550, 67 S.Ct. 883, 885, 91 L.Ed. 1088 (1947) (inferences, which are drawn by district court from "evidentiary facts" and

are material factors under Labor's regulations, should be left "undisturbed" by court of appeals unless "clearly wrong"). *See also Icicle Seafoods*, 475 U.S. at 713, 106 S.Ct. at 1529–30 ("facts necessary to a proper determination of the legal question whether an exemption to the FLSA applies in a particular case should be reviewed" under clearly erroneous standard); *Dalheim v. KDFW–TV*, 918 F.2d 1220, 1226 (5th Cir.1990) (same). Such inferences include, for example, findings as to what work constitutes an employee's "primary duty" under 29 C.F.R. 541.214. *Dalheim*, 918 F.2d at 1226.

■ However, we exercise plenary review of the district court's construction of section 13(a)(1), and its ultimate determination that Cooper's inside salespersons are not exempt under the statute. *Icicle Seafoods*, 475 U.S. at 714, 106 S.Ct. at 1530; *Dalheim, id.* To the extent Labor's regulations interpreting the exemption are at issue, we recognize that these constitute the agency's "body of experience and informed judgment" about the statute, and so, they should be given "considerable and in some cases decisive weight." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944).

■ We also understand that section 13(a)(1)'s exemptions from the Act's requirements are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). The burden of proving these exemptions is upon the employer, and if the record is unclear as to some exemption requirement, the employer will be held not to have satisfied its burden. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966).

---

**3.** Cooper has not appealed the district court's determination that Cooper's purchasing agents are not exempt from the Act's requirements, and

Labor has not appealed the district court's decision not to prospectively enjoin Cooper's overtime and record keeping practices.

### B.

Of the various exemptions provided by section 13(a)(1) of the Act, only the "administrative" exemption is at issue here. The statutory exemption provides as follows:

> The provisions of section 206 [minimum wage requirements] ... and section 207 [maximum hours and overtime requirements] shall not apply with respect to ... any employee employed in a bona fide ... *administrative* ... capacity ... as ... defined and delimited from time to time by regulations of the Secretary....

29 U.S.C. 213(a)(1) (emphasis added).

Labor has issued agency regulations interpreting the exemption for administrative employees. These regulations outline both "long" and "short" tests of bona fide administrative employee status. *See* 29 C.F.R. § 541.2(a)-(e) ("long test"); 29 C.F.R. §§ 541.2(e)(2) and 541.214 ("short test").[4] As the parties agree, the two-prong "short test" applies here because Cooper's inside salespersons are high salaried employees who earn not less than $250 per week.

Under the applicable short test, an employee qualifies as a bona fide administrative employee if: (1) the employee's *"primary duty consists of either the performance of office or nonmanual work directly related to management policies or general business operations of the employer or the employer's customers"; and* (2) "such primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214(a) (emphasis added). The district court concluded that the first requirement ("first prong") of the short test is dispositive of

the exemption issue with respect to Cooper's inside salespersons. We agree.[5]

Labor's regulations appearing at 29 C.F.R. § 541.205(a)-(d) establish the meaning of the first prong of the short test. Subsection "a" of the regulation reads as follows:

> The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the *administrative operations of a business as distinguished from "production"* or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform *work of substantial importance to the management or operation of the business* of his employer or his employer's customers.

29 C.F.R. § 541.205(a) (emphasis added). Subsection "a" first establishes the analytical importance of an *administrative/productive work dichotomy* to be used when characterizing an employee's "primary duty" for purposes of first prong analysis. This dichotomy is not, however, relevant when the business under scrutiny is a retail or service establishment. *See* 29 C.F.R. § 541.205(a). Then the appropriate classifying dichotomy is between "administrative" and "sales" work. *Id.* Since Cooper is a wholesaler, the district court correctly chose to focus on the administrative/productive work dichotomy when it applied 29 C.F.R. § 541.205(a) to Cooper's inside salespersons.

---

**4.** 29 C.F.R. § 541.2(e)(2) establishes the short test with a special proviso for high salaried employees. The test is articulated more fully at 29 C.F.R. § 541.214.

The Eighth Circuit Court of Appeals summarized the difference between the long and short tests as follows:

> The applicable regulation, 29 C.F.R. § 541.2(a)-(e), sets forth a [long] four-part test for an "employee employed in a bona fide ... administrative ... capacity" for employees, other than academic administrative personnel, who are compensated at a rate of not less than $155 per week, exclusive of board, lodg-

ing, or other facilities. However, a "streamlined" or "short" two-part test is applied to employees who are compensated at a rate of not less than $250 per week, exclusive of board, lodging, or other facilities.... Unlike the regular test of administrative capacity, the short test does not require the employee to "customarily and regularly" exercise discretion and independent judgment.

*Donovan v. Tama Meat Packing Corp.*, 817 F.2d 54, 55 (8th Cir.1987).

**5.** Accordingly, we will not reach second prong analysis of this case.

Subsection "b" of the regulation explicates this dichotomy by fleshing out the character of "administrative" (as opposed to "productive") activity in a business:

> The administrative operations of the business include the work performed by so-called white-collar employees engaged in *"servicing" a business* as, for example, advising the management, planning, *negotiating, representing the company, purchasing, promoting sales,* and business research and control. *An employee performing such work is engaged in activities relating to the administrative operations of the business* notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

29 C.F.R. § 541.205(b) (emphasis added). Thus, "servicing" an employer's business, such as by "negotiating", "representing", "purchasing" and "promoting sales", is "administrative" activity.

Subsection "a" of the regulation establishes too that only persons who perform *"work of substantial importance to the management or operation of the business"* will satisfy the first prong of the short test. Subsection "c" of the regulation describes "work of substantial importance" as follows:

> As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those [whose] *work affects policy or whose responsibility it is to execute or carry it out.* The phrase also includes a wide variety of persons who either carry out *major assignments* in conducting the operations of the business, or whose work *affects business operations to a substantial degree,* even though their as-

signments are tasks related to the operation of a particular segment of the business.

29 C.F.R. § 541.205(c) (emphasis added).

In summary then, the first prong of the short test of the administrative exemption asks ultimately whether an employee's primary work duty is *"directly related to management policies or general business operations"* of his employer. This ultimate question subsumes two other inquiries: (1) whether an employee is a "production" rather than "administrative" worker within the meaning of the statute and 29 C.F.R. 541.205(a) & (c); and (2) whether an employee performs "work of substantial importance" to his employer by directly or indirectly formulating, affecting, executing or carrying out management polices by, for example, undertaking "major assignments" *or* performing work which "affects business operations to a substantial degree" within the meaning of 29 C.F.R. 541.205(a) & (b). These inquiries are fact intensive.[6]

### C.

After trial, the district court made the following findings of fact:

> Inside salespersons at Cooper Electric work an average of forty-five hours per week. The majority of their time is spent in the office making telephone sales of electrical products, or in work closely related to selling electrical products. Sales are made primarily to contractors, industrial buyers, institutions, and government organizations. Only a small percentage of inside sales are made to individual consumers. Inside salespersons generate approximately $20 million dollars of Cooper Electric's gross annual sales.
>
> During the course of their employment, inside salespersons are paid a fixed salary plus incentive bonuses based on sales performance. These bonuses can increase an inside salesperson's annual

---

**6.** "It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business...." 29 C.F.R. § 541.205(c)(1).

compensation by $2000 to $5000. The sales incentive program is designed to reward the sales staff for attending educational programs, increasing the number of line items sold and maintaining high profit margins.

Most of the goods sold by inside salespersons are from Cooper Electric's in-house inventory. Price quotations for these items are available through various trade publications, computerized price sheets, manufacturer's representatives, and an in-house computer which coordinates a pricing matrix based on the customer's record of purchases. Depending on the particular transaction, an inside salesperson may deviate either upward or downward from these price quotes, increasing or decreasing the company's margin of profit. When a particular item is not in stock, an inside salesman will call a manufacturer directly to purchase the product on special order. In that instance, the inside salesperson negotiates the cost to Cooper Electric with the manufacturer's representative and then negotiates the selling price to the customer requesting the goods.

App. 10–12.

Analyzing these historical facts under the first prong of the short test, the district court concluded that Cooper's inside salespersons do not satisfy either subpart of first prong analysis—to wit, they were not "administrative" employees and they do not perform "work of substantial importance" to their employer. The district court did not reach analysis under the short test's second prong which focuses on whether an employee's "primary duty includes work requiring the exercise of discretion and independent judgment." 29 C.F.R. § 541.214(a).

### D.

■ We hold the district court did not err by concluding that Cooper's inside salespersons are production rather than administrative employees. The district court recognized appropriately that "it is important to consider the nature of the employer's business" when deciding whether an employee is an administrative or production worker. App. 17. Thus, the court took account of the parties' stipulations that Cooper's business "is the sale of electrical products" and its "primary business purpose ... is to *produce sales* of electrical products." App. 17; 32–33. These stipulations reflect the underlying reality of wholesale sales enterprises like Cooper: they aim to *produce* wholesale sales. It follows that Cooper's inside salespersons may be classified as "production" rather than "administrative" employees for purposes of the short test and Labor's regulations at 29 C.F.R. § 541.205. *See similarly Dalheim*, 918 F.2d at 1228–33 (television newscast producers, station directors and assignment reporters are non-exempt employees because their primary work duties are related to production aspect of television station's business); *Gusdonovich v. Business Information Co.*, 705 F.Supp. 262, 264–65 (W.D.Pa.1985) (insurance claims investigator is not an administrative employee where employer's business purpose is " 'producing' information for its clients" and investigator's duties "consisted almost entirely of gathering that 'product' ").

The district court decided properly that "while [Cooper's inside salespersons'] efforts cannot be considered 'production' in the sense of manufacture of tangible goods, ... these individuals play a substantial and integral role in defendant's ability to 'produce sales of electrical products' ". App. 18. Given "[t]he narrow scope of an inside salesperson[']s responsibility", the district court concluded that Cooper's inside salespersons "engage in activities relating to the day-to-day 'production' of sales within the plain meaning of the regulation rather than 'the administrative operation of a business' ". *Id.* This conclusion is not clearly erroneous.

Contrary to Cooper's view, the concept of "production" in 29 C.F.R. § 541.205(a)'s administrative/productive work dichotomy is not to be understood as covering only work involving the manufacture of tangibles. The concept is not limited to manufacturing activities. Since Labor's regulations indi-

cate that certain non-manufacturing employees such as bank tellers, bookkeepers and clerks are not typically "administrative" employees for purposes of the statutory exemption, non-manufacturing employees may therefore be "production" workers for purposes of the dichotomy. *See* 29 C.F.R. 541.205(c)(1)–(3).

"Production" within the meaning of 29 C.F.R. § 541.205(a) may include wholesale sales work in the context of wholesale-distribution businesses like Cooper's. If Cooper's narrower construction of the term "production" were adopted, then all workers not actually engaged in tangibles *manufacture* would need to be classified as administrative employees. This narrow view of "production" under the regulation is at odds with the principle that exemptions from the Act's requirements are to be narrowly construed. We hold that inside salespersons like Cooper's may be classified as "production" workers for purposes of Labor's regulations under section 13(a)(1) of the Act.

■ Focusing on the language at 29 C.F.R. § 541.205(b) which permits a finding of administrative work when an employee "services" his employer's business by, for example, representing, negotiating, purchasing, and promoting sales on his employer's behalf, the district court reasoned as follows:

> Defendant argues that inside salespersons participate in the administrative operations of the business because they *"represent* the company" to individuals seeking to *purchase* electrical supplies from Cooper Electric, occasionally *"promote sales"* by advising customers of additional products which may be a necessary or beneficial supplement to their existing orders, and *"negotiate"* on behalf of the company to make a sale to a particular customer.... *Admittedly, this characterization of an inside salesperson's responsibilities does meet the literal language of the interpretive regulations. However, these activities are*

> *part and parcel to the inside salespersons [sic] primary responsibility of producing sales; the impact on administrative operations of the business is minimal.*

App. 18–19 (emphasis added). The district court concluded that Cooper's inside salespersons "are not engaged in 'servicing' the business so as to participate in the administrative operations of Cooper Electric." App. 19. This determination is not clearly erroneous.

Cooper's inside salespersons do not "service" Cooper's business enough to justify a finding that they are administrative employees within the meaning of 29 C.F.R. § 541.205(a) & (b). Even though inside salespersons may sometimes "negotiate", "represent the company" and "purchase" on Cooper's behalf when customers request products not already in Cooper's stock-in-inventory, these are not their primary duties. The first-prong of the short test requires that an employee's *"primary duty"* consist of administrative-type work. 29 C.F.R. § 541.214(a).[7] As the district court found, an inside salesperson's "primary responsibility" is to produce sales. It follows that negotiating product purchases from manufacturers is only intermittent, secondary employment responsibility for Cooper's inside salespersons. This does not make them "administrative" employees within the meaning of 29 C.F.R. § 541.205(a) & (b).

Likewise, the inside salespersons' primary duties of making routine wholesale sales are not administrative in nature just because their sales inevitably involve some price/terms negotiations with customers. This activity is not a "servicing" of Cooper's business. As the district court decided, these activities are "part and parcel" of the activity of "producing sales".

"Servicing" a business within the meaning of 29 C.F.R. § 541.205(b) denotes employment activity *ancillary* to an employer's principal production activity, whether that be production of a "commodity or com-

---

7. See *also* 29 C.F.R. § 541.206(a) which says, "[t]he definition of 'administrative' exempts *only* employees who are *primarily engaged* in the responsible work which is characteristic of employment in a bona fide administrative capacity". (Emphasis added.)

modities, ... goods or services", *see Dalheim*, 918 F.2d at 1230, or as in the case here, production of wholesale sales. It follows that inside salespersons do not "service" Cooper's business by making wholesale sales—wholesale sales *is* Cooper's business. Any negotiation and representational duties undertaken by Cooper's inside salespersons in the course of ordinary selling do not constitute administrative-type "servicing" of Cooper's wholesale business within the meaning of 29 C.F.R. § 541.205(b). These activities are only routine aspects of sales *production* within the context of Cooper's operation.

Furthermore, Cooper's inside salespeople do not primarily undertake administrative-type work of 'sales promotion' within the meaning of 29 C.F.R. § 541.205(b). Under that regulation, "promoting sales" means something more than routine selling efforts focused simply on particular sales transactions. Sales promotion (as an example of "servicing" under 29 C.F.R. § 541.205(b)), consists of marketing activity aimed at promoting (i.e., increasing, developing, facilitating and/or maintaining) customer sales *generally*. "Promoting sales" does not encompass activities necessarily included in the process of closing specific sales.

■ Accordingly, the district court was not clearly wrong when it rejected Cooper's argument that its inside salespersons are administrative employees who "promote sales". Inside salespersons at Cooper make discrete sales; they are not promoters or marketeers. Even if, as Cooper argues,[8] they "occasionally ... advis[e] customers of additional products which may be a *necessary supplement to their existing orders*, and 'negotiate' on behalf of the company to make a sale to a *particular* customer", App. 18 (emphasis added), such selling efforts in the context of discrete, particularized sales transactions do not constitute "administrative" work within the meaning of section 13(a)(1) of the Act.

**E.**

■ As for the first-prong's other requirement that employees perform "work of substantial importance to the management or operation" of an employer's business within the meaning of Labor's regulations at 29 C.F.R. § 541.205(a) & (c), the district court said:

It is axiomatic that a salesperson 'performs work of substantial importance' to any sales-oriented business. Because of the large volume of sales generated by inside salespersons, it is clear that these individuals are important to the success of Cooper Electric. However, *to suggest that in making these sales, an inside salesperson is carrying out major assignments is to strain the interpretation of the regulation beyond common sense.... [T]he nature of an inside salespersons [sic] work is to produce sales for Cooper Electric, not to develop or implement specific work assignments consistent with an overall company policy.* There is no evidence in the record to suggest that inside salespersons are formally assigned to particular customer accounts.... *To conclude that this interpretive regulation [§ 541.205(c)] was intended to include inside salespersons would unreasonably extend the application of an otherwise unambiguous provision.*

App. 19–20 (emphasis added). With this the district court decided that Cooper's inside salespersons do not perform work of substantial importance to the management or operation of Cooper's business.

Though the court found explicitly that Cooper's inside salespersons do not carry out "major assignments", it did not say their work "affects [Cooper's] business operations to a substantial degree" within the meaning of 29 C.F.R. § 541.205(c). Nevertheless, the court indirectly spoke to the latter point by saying inside salespersons "[do] not ... develop or implement specific work assignments consistent with an overall company policy." App. 19.

---

**8.** Contrary to Cooper's assertion on appeal, the district court did not find that inside salespersons "promote sales" within the meaning of

§ 541.205(b)—that is only the "characterization" of these employees that Cooper advanced to the district court. *See* App. 18–19.

Cooper and *amici* contend inside salespeople are administrative employees who "affect" Cooper's business operations "to a substantial degree", because on the one hand the inside salespeople make important financial contributions to Cooper's business; and on the other, these salespeople have skills and knowledge that are essential to Cooper's wholesale enterprise.

We hold as a matter of law that Cooper's inside salespersons do not perform "work of substantial importance to the management or operation" of Cooper's business within the meaning of 29 C.F.R. § 541.205(a) and (c). The district court decided correctly that inside salespersons do not undertake "major assignments" within the meaning of 29 C.F.R. § 541.205(c). The record suggests these salespersons are no more than routine functionaries, albeit important employees.

Also, Cooper's inside salespersons do not "affect[ ] [Cooper's] business operations to a substantial degree" within the meaning of 29 C.F.R. § 541.205(c). We read that requirement of the regulation as meaning that only employees whose work substantially affects the *structure* of an employer's business operations and management policies may be characterized as administrative workers. We conclude the district court's finding that "the nature of an inside salespersons [sic] work is to produce sales for Cooper Electric, *not to develop or implement specific work assignments consistent with an overall company policy,*" is not clearly erroneous, and it supports the legal conclusion that inside salespersons do *not* "affect" Cooper's business operations "to a substantial degree" within the meaning of 29 C.F.R. § 541.205(c). The factual finding and the record as a whole indicates Cooper's inside salespersons are not involved directly or indirectly in the determination, administration or implementation of Cooper's management or operational policies.

■ We reject *amici*'s argument that inside salespersons affect Cooper's business operations to a substantial degree sim-

ply because their collective efforts account for so much of Cooper's annual sales.[9] The financial effect of employee activity cannot alone show "work of substantial importance to the management or operation" of an employer's business within the meaning of 29 C.F.R. § 541.205(a) & (c). Otherwise, any subset of employees whose work *as a group* determines an enterprise's financial health might qualify as "administrative" employees within the meaning of these regulations, no matter how insignificant any one employee's role is to the enterprise. Such a result is inconsistent with section 13(a)(1) of the Act and 29 C.F.R. § 541.205(c). *See Dalheim,* 918 F.2d at 1231 ("that a worker's poor performance may have a significant profit-and-loss impact is not enough to make that worker an exempt administrator").

Labor's regulation at § 541.205(c)(2) clearly indicates that an employee does not perform administrative work of substantial importance just because his employer will experience financial losses if the employee fails to perform his job properly. Also, whether inside salespersons perform work of substantial importance to the management or operation of Cooper's business must be addressed in terms of the consequences of each employee's efforts alone, not the effect of the salespeople as a group. 29 C.F.R. § 541.205(c)(6).

We also reject Cooper's argument on appeal that the job-related skill and knowledge of Cooper's inside salespersons justify a conclusion that their work substantially affects Cooper's business operations. Such expertise is inevitably developed and applied by the salespeople in the course of making routine sales; the record indicates inside salespeople do not apply their skill and knowledge so as to affect the structure of Cooper's management policies or operations.

In summary, we find no error in the district court's reasoning and judgment that Cooper's inside salespersons fail to qualify for section 13(a)(1)'s administrative exemption from the Act's overtime require-

9. The district court found that sales by inside salespersons account for approximately $20 mil-

lion of Cooper's gross annual sales of approximately $35 million. App. 18.

ments because these employees do not satisfy the first prong of the short test.[10] We must, however, reverse the lower court's refusal to award liquidated damages.

## III. MANDATORY LIQUIDATED DAMAGES UNDER SECTION 16(b)

### A.

When an employer violates the overtime wage provisions of section 7 of the Act, section 216(b) provides for payment of both unpaid wages and an equivalent amount of *mandatory* liquidated damages.

> Any employer who violates the provisions of ... section 207 ... *shall be liable* to the employee or employees affected in the amount of ... their unpaid overtime compensation, ... *and in an additional equal amount as liquidated damages....*

29 U.S.C. § 216(b) (emphasis added). "Under the Act, liquidated damages are compensatory, not punitive in nature. Congress provided for liquidated damages to compensate employees for losses they might suffer by reason of not receiving their lawful wage at the time it was due." *Marshall v. Brunner,* 668 F.2d 748, 753 (3d Cir.1982).

 Despite the mandatory language of the Act, Congress has provided courts with some discretion to limit or not award liquidated damages. Section 11 of the Portal–to–Portal Act provides:

> In any action ... to recover ... unpaid overtime compensation, or liquidated damages, under the [FLSA] ... if the employer shows ... the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ... the court may, in its sound discretion, award no liquidated damages or award any

amount thereof not to exceed the amount specified in [29 U.S.C. 216].

29 U.S.C. § 260. We have stressed that employers must show good faith and reasonable grounds before a court may exercise "sound discretion" to deny or limit liquidated damages.

> [The Portal–to–Portal Act] provides that the district court has discretion to award no liquidated damages, or to award an amount of liquidated damages less than the amount provided by section 216(b) of the FLSA, *if, and only if,* the employer shows that he acted in good faith and that he had reasonable grounds for believing that he was not violating the Act.

*Brunner,* 668 F.2d at 753 (emphasis in original). Furthermore, before a district court exercises discretion it *"must make findings ... that the employer acted in good faith and with reasonable grounds." Williams v. Tri–County Growers, Inc.,* 747 F.2d 121, 129 (3d Cir.1984) (emphasis added, quoting from *Guthrie v. Lady Jane Collieries, Inc.,* 722 F.2d 1141, 1149 (3d Cir.1983)). Simply quoting from the provisions of the Act is not enough. *Claridge Hotel and Casino,* 846 F.2d at 187–88.

We have also said a defendant employer bears the "plain and substantial" burden of proving he is entitled to discretionary relief from the FLSA's mandatory liquidated damages provision. *Tri–County Growers, Inc.,* 747 F.2d at 128–29. An employer must prove,

> that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict....

The *good faith requirement is a subjective one* that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act." ... The *reasonableness requirement imposes*

---

**10.** To qualify under the short test, first and second prong requirements must both be met. Cooper's arguments on appeal which rest on Labor's regulations addressing the *second* prong of the short test of 29 C.F.R. § 541.214 are unavailing because its inside salespersons do not satisfy first prong requirements. First and second prong requirements are analytically distinct, even if the same underlying factual determinations are material to both. The first prong asks whether an employee's primary work is related to management policies or general business operations, whereas the second focuses on the degree of discretion and independent judgment exercised by an employee.

*an objective standard* by which to judge the employer's conduct ... Ignorance alone will not exonerate the employer under the objective reasonableness test....

If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages.

*Id.* at 129 (citations omitted). *See similarly Claridge Hotel and Casino,* 846 F.2d at 187.

■■■ To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions.

The fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute. Moreover, the employee need not establish an intentional violation of the Act to recover liquidated damages. Instead, the employer must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements.

*Tri–County Growers, Inc.,* 747 F.2d at 129 (citation omitted). A defendant employer's burden of proof is "a difficult one to meet", *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir.1987). "Double damages are the norm, single damages the exception...." *Walton v. United Consumers Club, Inc.,* 786 F.2d 303, 310 (7th Cir.1986).

### B.

■■■ Assuming a district court has first properly made the required preliminary findings of an employer's subjective good faith and objectively reasonable grounds for violating the Act, we will review its exercise of "substantial discretion" to deny or limit an award of liquidated damages only for abuse of discretion. Furthermore, while we must apply the clearly erroneous standard of Fed.R.Civ.P. 52(a) when reviewing both the district court's historical findings of fact which underlie its "good faith" and "reasonableness" determinations, *Icicle Seafoods,* 475 U.S. at 714, 106 S.Ct. at 1530, and the finding of subjective good faith itself, we exercise plenary review of the district court's legal conclusion that Cooper had "reasonable grounds for believing" that its violative conduct was not a violation of the FLSA.[11]

Thus, we must decide first whether the district court erred by finding that Cooper violated the FLSA's overtime provisions in reasonable good faith. Only if the district court did not err making this preliminary determination, will we review with deference its refusal to award liquidated damages.

### C.

■■■ We hold that the district court erred as a matter of law by concluding that Cooper violated FLSA overtime requirements in reasonable good faith. Cooper failed to take affirmative steps to ascertain the Act's requirements before the onset of Labor's Wage and Hour Investigation, and this failure precludes a finding of *reasonable* good faith. Accordingly, we must remand for an award of liquidated damages equivalent to Cooper's employees' unpaid overtime wages, and will vacate the district court's award of prejudgment interest.

The district court reasoned that although Cooper did not attempt to ascertain the Act's overtime pay requirements, it violated the Act reasonably and in good faith

---

**11.** To the extent we said in *Tri–County Growers, Inc.,* 747 F.2d at 129, n. 15, that "[t]he determination of good faith and reasonableness is one of ultimate fact" which is reviewed for legal error, we were wrong since the Supreme Court has held that Rule 52(a) "does not divide findings of fact into those that deal with 'ultimate' and those that deal with 'subsidiary' facts." *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982).

However, the clearly erroneous standard of Rule 52(a) "does not apply to conclusions of law." *Id.* A finding under section 11 of the Portal–to–Portal Act that an employer "had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]", 29 U.S.C. § 260, is a legal conclusion based on historical facts and judicial interpretations of the statute itself. Accordingly, such a legal conclusion is subject to plenary review.

because the company's illegal pay practices conformed to industry customs, and there was no evidence Cooper willfully violated the Act. The district court said:

> [Cooper] acted in good faith and had reasonable grounds for believing that the subject employees were exempt from the overtime and record keeping provisions of the Act. It is true, as [Labor] notes, that prior to the Wage and Hour Investigation conducted by the Department of Labor, [Cooper] *did not do any analysis or conduct any inquiry to determine whether the subject employees qualified for an exemption.* Instead, since the inception of its business in 1961, defendant followed the well-established and widely accepted industry practice of compensating these employees on the basis of salary plus bonus where appropriate. The testimony is uncontroverted in this regard. Reliance on such an industry standard is reasonable and necessary if a company is to remain competitive in the market for qualified employees. [Cooper] cannot be faulted for its admitted lack of diligence in determining the applicability of the Act's requirements as to these employees.
>
> Moreover, there is no evidence in the record to suggest that [Cooper] knowingly and willfully intended to avoid compliance with the requirements of the Act. In fact, the evidence indicates that as soon as actual non-compliance was brought to the attention of the defendant, the company voluntarily changed the pay structure for computer operators, assistant warehouse managers and purchasing agents. This voluntary compliance clearly is indicative of defendant's good faith. Finally, defendant's refusal to alter the compensation package for inside salespersons was based on a legitimate, good faith dispute as to whether these employees did, in fact, qualify for an exemption from the requirements of the Act. Indeed, the litigation of this case and the close factual determinations necessary for its ultimate resolution give credence to the reasonableness and good faith of the defen-

dants actions. The record is clear that the defendant employer did not callously disregard its responsibility. Accordingly, the Court concludes that an award of liquidated damages is not appropriate in this case.

App. 23–25 (emphasis added).

We have quoted at length because we will discuss why the district court's reasoning does not support its findings of reasonable, good faith violations. First, that Cooper "did not do any analysis or conduct any inquiry to determine whether [its] ... employees qualified for an exemption" and it "admitted [a] lack of diligence in determining the applicability of the Act's requirements", are dispositive of the liquidated damages issue. These facts are not clearly erroneous and upset the district court's legal conclusion that Cooper violated the Act in reasonable good faith. An employer "must affirmatively establish that he acted in good faith by attempting to ascertain the Act's requirements." *Tri–County Growers, Inc.*, 747 F.2d at 129. Cooper's failure to inquire into the Act's overtime pay requirements before Labor's Wage and Hour Investigation precludes a determination that the company's subjective good faith was reasonable. Accordingly, the district court's reasonableness finding was legal error, and that alone requires reversal and remand.

Second, the district court's finding that "there is no evidence in the record to suggest that [Cooper] knowingly and willfully intended to avoid compliance with the Act" is not by itself enough to support the finding of reasonable good faith. A showing that an employer "did not intentionally violate the Act" falls short of satisfying objective component of the good faith requirement. *Tri–County Growers, Inc.*, 747 F.2d at 129.

Third, the district court's factual finding that Cooper "voluntarily changed the pay structure" for some but not all of its affected employees *after* Labor initiated its investigation is irrelevant to good faith analysis.[12] Section 11 of the Portal–to–

---

12. Cooper remained unwilling to pay overtime to its inside salespersons even after Labor initi-

Portal Act requires *retrospective* analysis of an employer's conduct with respect to violations of the FLSA, not appraisal of an employer's post-violation conduct. Since Cooper's illegal wage payment practices preceded Labor's investigation, its response to the investigation may show good judgment but does not establish a good faith violation.

Fourth, that Cooper's violations conformed to "well-established and widely accepted industry practice" is not ground for finding a reasonable good faith violation of the Act. In lieu of any affirmative attempt by an employer to determine the legality of its wage payment practices, the employer's adherence to customary and widespread industry practices that violate the Act's overtime pay provisions is not evidence of an objectively reasonable good faith violation. *Wilamowsky,* 833 F.2d at 19–20. *See similarly Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 465 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978) ("That an employer and others in the industry have broken the law for a long time without complaints from employees is plainly not the reasonable ground to which the statute speaks."); *Tri–County Growers, Inc.,* 747 F.2d at 129 ("fact that an employer has broken the law for a long time without complaints from employees does not demonstrate the requisite good faith required by the statute").

The district court's good faith theory that Cooper's violative pay practices were "reasonable and necessary" competitive responses to the "market for qualified employees", App. 23, is also mistaken. This reasoning tends improperly to favor companies in industries where economic conditions make violations of the Act most attractive or pervasive. *See similarly Glenn v. General Motors Corp.,* 841 F.2d 1567, 1573 (11th Cir.), *cert. denied,* 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988) (in context of liquidated damages award arising under Equal Pay Act, court rejects discredited argument that market forces led defendant-employer to reasonable belief that discriminatory pay practices were in conformity with law).

Finally, the circumstances here do not support the district court's conclusion that Cooper's violation resulted from a "legitimate, good faith dispute as to whether [inside salespersons] ... did, in fact, qualify for an exemption from the requirements of the Act." While we have considered the closeness of factual or legal questions in a case arising under the Act to be relevant to a liquidated damages decision, *see Claridge Hotel and Casino,* 846 F.2d at 187, we hold here that in order to assist an employer's case against liquidated damages, "legal uncertainty ... must pervade and markedly influence the employer's belief; merely that the law is uncertain does not suffice". *Laffey,* 567 F.2d at 466. Legal uncertainty must have actually led the employer who violated the Act to believe that it was in compliance at the time of the violation. Here there is no record evidence that Cooper undertook its illegal pay practices reasonably believing them to be legal because of some pervasive legal uncertainty concerning the exemption status of its employees. The legality of its pay practices was never an issue for Cooper until Labor began its Wage and Hour Investigation.

We conclude that the district court had no discretion to deny liquidated damages for these employees because, first and foremost, Cooper had not demonstrated that it took affirmative steps to ascertain the legality of its pay practices before Labor's investigation. Accordingly, we will remand for an order awarding mandatory liquidated damages.

The purpose of an award of liquidated damages under section 16(b) of the Act, 29 U.S.C. § 216(b), is to compensate employees for any losses caused by delayed receipt of overtime wages they are due. *Brunner,* 668 F.2d at 753. Since prejudgment interest serves the same purpose,[13]

---

ated the investigation that put Cooper on actual notice of the Act's overtime pay requirements.

13. "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation

we will vacate that part of the district court's order.

### IV.

In summary, we will affirm the district court's judgment that Cooper violated the Act as charged. We will, however, vacate the lower court's award of prejudgment interest and remand for an award of liquidated damages.

for the injury those damages are intended to redress." *West Virginia v. United States,* 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987).