Robert B. REICH, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

JOHN ALDEN LIFE INSURANCE CO., Defendant.

Civil Action No. 95–40086–NMG.

United States District Court, D. Massachusetts.

Oct. 8, 1996.

Albert H. Ross, U.S. Department of Labor, Office of the Solicitor, Boston, MA, for Robert B. Reich.

William J. Kilberg, Eugene Scalia, Gibson, Dunn & Crutcher, Washington, DC, Norman Holtz, Holtz, Gilman & Grunehaum, Boston, MA, for John Alden Life Ins. Co.

## MEMORANDUM AND ORDER

GORTON, District Judge.

Plaintiff Robert B. Reich, Secretary of the United States Department of Labor ("the Secretary"), brings this action against defendant, John Alden Life Insurance Company ("John Alden"), pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* The Secretary contends that John Alden has failed to pay overtime wages to certain employees known as marketing representatives and marketing specialists who work in its Westborough, Massachusetts office (hereinafter referred to collectively as "marketing representatives" or "MRs"). John Alden responds that these marketing

representatives fall within the "administrative exception" to the overtime provisions of FLSA as stated in 29 U.S.C. § 213(a)(1), which exempts "any employee employed in a bona fide executive, administrative, or professional capacity".

Both parties have moved for summary judgment and have stipulated to the facts. For the reasons set forth below, this Court finds that the marketing representatives are exempt under 29 U.S.C. § 213(a)(1) and therefore John Alden's motion for summary judgment will be allowed and the cross-motion by the Secretary will be denied.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered where the pleadings, discovery on file and affidavits, if any, show "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the entire record in the light most favorable to the plaintiffs, the nonmoving party, and indulge all reasonable inferences in their favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993).

The moving party initially bears the burden of showing that "there is an absence of evidence to support the non-moving party's case." *FDIC v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). If the movant satisfies that burden, it shifts to the non-moving party to set forth specific facts to establish the existence of a genuine material issue. *Id.* In deciding whether a factual dispute is genuine, this Court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir.1992). The non-movant's assertion of mere allegation or denial of the pleadings is insufficient on its own to establish a genuine issue of material fact. Fed.R.Civ.P. 56(e).

## II. FACTUAL BACKGROUND

In the instant case, the parties have stipulated to the following relevant facts:

1. Defendant John Alden designs, creates, and sells insurance products of various kinds, including group health, group dental, disability, life insurance, annuities and long-term care. Stipulation of Facts ("Stipulation") at ¶ 1. It does not sell its products through direct contacts with the end-purchasers. Rather, it employs marketing representatives ("MRs"), whose primary duty is to contact and deal with licensed independent insurance agents ("agents") who, in turn, are in contact with the end-purchasers. *Id.* at ¶ 6. The agents recommend to the end-purchasers a variety of insurance products, including those of John Alden as well as those of its competitors. *Id.* When the end-purchasers ultimately decide which insurance product to buy, the agent acts as an intermediary between the marketing representatives and the end-purchasers. *Id.*

2. In order to increase purchases of John Alden insurance products by the end-purchasers, the MRs maintain constant contact with the agents. MRs do not "share" agents with one another. They all handle agents in Massachusetts and responsibility is divided for agents in Maine, New Hampshire, Rhode Island and Vermont. Each keeps a list or "deck" of approximately 500 agents with whom he or she is in contact. *Id.* at ¶ 7.

The MRs independently decide which of those agents to contact, when to contact them, and which products to emphasize to any particular agent. *Id.* On a typical day, the MRs make three kinds of calls to agents: 1) cold calls intended to acquaint agents with John Alden products and to enable MRs to determine the needs of the agents and potential end-purchasers; 2) calls to those agents with whom the MRs are already familiar; and 3) follow-up calls. *Id.* at ¶ 8. In dealing with agents, the MRs operate without scripts or required verbatim statements. *Id.* at ¶ 12.

3. The MRs serve as the agents' primary contact with John Alden. They keep the agents apprised of new products or combinations of products that are available to meet the needs of prospective or existing end-

purchasers, any price changes in those products, and they provide competitive analysis on new or renewal business. *Id.* at ¶¶ 10, 12. The MRs also answer questions about the company, its products and its pricing structure, provide customer service, and refer agents, if necessary, to those John Alden employees who can provide more detailed information on specific topics such as underwriting. *Id.* at ¶ 10.

Frequently, the MRs help agents develop proposals for bidding on new or existing business and recommend an appropriate plan, taking into account the age and health of the prospective end-purchasers, as well as past rates and benefits. *Id.* The prices and terms of John Alden products are, however, set by the company, not by the MRs, and are non-negotiable. *Id.* at ¶ 13. The MRs sometimes a) pass along studies and articles about John Alden or its competitors; b) give talks and presentations describing John Alden products and services to groups of agents; and c) ask agents to forward information about their competitors so that they can maintain files on the competition. *Id.* at ¶ 12.

4. MRs generally do not have direct contact with the end-purchasers. When an end-purchaser decides to buy a John Alden product, the agent informs the MR who then sends to the agent an application or "request for participation" (hereinafter "request"). The agent then meets with the end-purchaser for a formal "closing" and presents the request. Once the request is completed, the agent returns it, along with one month's premium, to the MR, who, in turn, forwards the materials to the underwriting department. While that request is pending, the MR· acts as a conduit between the agent and prospective purchaser on the one hand, and the underwriting department on the other. The decision whether to approve a request is made solely by the underwriting department. *Id.* at ¶¶ 14, 15.

5. John Alden MRs are typically college graduates with two to six years of marketing experience. They initially receive training for a period between several weeks and several months. During that time, they attend seminars, receive personal instruction from District Managers and experienced MRs, and engage .in role-playing to simulate contacts with agents. In general, MRs receive both formal and informal instruction and guidance on which products and product features to emphasize to agents. They attend weekly "sales" meetings, where they discuss issues that have arisen in past conversations with agents, including information about products or prices of competitors that are intriguing. In the past, recommendations of MRs in the weekly meetings have been relayed by supervisors and have contributed to changes in John Alden products. *Id.* at ¶ 11.

6. The following qualities are important to a MR's success over time: familiarity with the needs, clients and techniques of various insurance agents, the ability to cultivate an agent's interest in John Alden products, the ability to know which agents have end-purchasers with needs that John Alden can meet and to contact them, and the ability to gather sufficient information about particular end-purchasers in order to make an appropriate proposal. *Id.* at ¶ 6.

7. The average annual compensation for John Alden MRs is $50,000. More experienced MRs earn as much as $75,000. *Id.* at ¶ 23. Their pay consists of a) a base salary, b) incentive compensation based upon the number and value of John Alden products sold through agents included in their "deck", and c) a bonus tied to the performance of the John Alden products issued through agents credited to them. *Id.* at ¶ 21. To encourage MRs to increase sales, John Alden maintains a "sales board" in the Westborough office which lists every MR and the number of sales each day. The company also generates weekly "sales reports" identifying the sales credited to each MR, most of whom are expected to meet quarterly benchmarks. *Id.* at ¶ 17.

8. The MRs at issue in this case work from approximately 7:30 a.m. to 5:30 p.m., with a one-hour lunch period. Of that time, they spend approximately seven hours on the telephone with their agents and an additional two hours performing paperwork related to those contacts. *Id.* at ¶¶ 18, 19. The parties agree that the MRs are paid more than $250 per week. *Id.* at ¶ 23.

## III. LEGAL DISCUSSION

The FLSA establishes a minimum wage for working Americans and requires that employees be compensated for hours worked in excess of 40 hours per week at a minimum rate of one-and-a-half times their regular rate of pay. 29 U.S.C. § 207(a). Section 213(a)(1) of 29 U.S.C. exempts from that requirement "any employee employed in a bona fide executive, administrative, or professional capacity ... as such terms are defined and delimited from time to time by regulations of the Secretary [of Labor]".

■■■■ This Court notes that the exemptions contained in 29 U.S.C. § 213(a)(1) are to be "narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Furthermore, it is the defendant, John Alden, who bears the burden of proving that its marketing representatives fall within the administrative exemption. *Reich v. Newspapers of New England, Inc.*, 44 F.3d 1060, 1070 (1st Cir.1995).

The parties argue, and this Court agrees, that the "short test" for administrative exemption, as set forth in 29 C.F.R. § 541.2(e)(2), governs the instant case. That test provides that employees who earn more than $250 per week qualify as administrative employees if 1) their primary duty consists of "[t]he performance of office or nonmanual work directly related to management policies or general business operations of [the] employer or [the] employer's customers", 29 C.F.R. § 541.2(a), *and* 2) such primary duty includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.2(e)(2). This Court considers each prong of the test in turn.

### A. *Primary Work Duties*

■■■ In their Stipulation of Facts, the parties agree that the "primary duty" of marketing representatives is

to contact and deal with licensed independent insurance agents ("agents"), and related activities, [in order] to increase purchases of John Alden insurance products by end-purchasers who are in contact with the agents.

Stipulation at ¶ 6. This Court must therefore determine whether that primary duty is "directly related to management policies or general business operations" of John Alden. 29 C.F.R. § 541.2(a)(1).

In making that determination, this Court is guided by 29 C.F.R. § 541.205(a), which states that

[t]he phrase "directly related to management policies or general business operations of [the] employer or [the] employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of [the] employer or [the] employer's customers.

### 1. *Administrative or Production Work*

The Secretary in this case argues that John Alden's marketing representatives are simply salespeople who perform "production", as opposed to "administrative", duties. In support of his argument, the Secretary relies heavily upon a decision by the Third Circuit Court of Appeals, *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896 (3rd Cir. 1991), *cert. denied*, 503 U.S. 936, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992). In that case, the parties stipulated that Cooper Electric's primary business purpose was to produce sales of electrical products. *Id.* at 903. Based upon that admission by the parties, the Third Circuit found that the company's salespersons were "production" employees because they actually produced those sales. *Id.* at 903–05. The Secretary now argues before this Court that, because the primary duty of John Alden's marketing representatives is to carry out the day-to-day sales operations of the company, their duties are similarly "productive" in nature.

John Alden disputes that characterization of the duties of its marketing representa-

tives. It relies upon the definition of administrative duties as promulgated by the Secretary in 29 C.F.R. § 541.205(b):

The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control.

John Alden argues that, because its marketing representatives clearly engage in "promoting sales" and "representing the company", they perform administrative work.

Specifically, John Alden contends that its marketing representatives "devote themselves to cultivating hundreds of independent insurance agents over broad geographic regions, and the agents in turn function as the sales force for John Alden products." Defendant's Memorandum in Support at 8. It also maintains that the nature of the daily contact between the representatives and the agents is consistent with a finding that the representatives "represent" the company. Finally, defendant points out that the marketing representatives do not design or produce the company's insurance products; rather, they describe those products to agents, thereby promoting company sales.

This Court is persuaded by defendant's argument and agrees that the marketing representatives at issue engage primarily in administrative work. The Court also finds that the *Cooper Electric* case, relied upon by plaintiff, is distinguishable. In the instant case, the parties have stipulated that John Alden's primary business is to design, create and sell insurance products of various kinds. *See* Stipulation at ¶ 1. Based upon that stipulation, this Court concludes that John Alden's "products" are the insurance policies themselves. While the company's survival inevitably depends upon sales of those products, the marketing representatives, who promote sales of, but do not set the prices or terms of those policies, do not perform "production" duties. This Court agrees with the analysis of the *Cooper Electric* case in *Reich v. Haemonetics,* 907 F.Supp. 512 (D.Mass. 1995) where the court distinguished *Cooper*

*Electric* on its facts stating that the salespeople at Cooper Electric were deemed to be in "production" specifically because the primary purpose of Cooper Electric was to "produce sales of electrical products." *Id.* at 517 (quoting *Cooper Electric,* 940 F.2d at 903). We therefore proceed to consider whether the work of the marketing representatives is of "substantial importance to the management or operation" of John Alden's business.

### 2. Work of Substantial Importance to Management or Operations

The Code of Federal Regulations provides that the administrative exemption is not meant to be limited to "persons who participate in the formulation of management policies or in the operation of the business as a whole." 29 C.F.R. § 541.205(c). That regulation requires that the employee's work must be directly related to management policies or general business operations and of "substantial importance" to the management or operation of the business, but the regulation also applies to employees whose work

"affects policy or whose responsibility it is to execute or carry it out ... [as well as to] a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business."

29 C.F.R. § 541.205(c).

The Secretary argues that John Alden's marketing representatives have no policy responsibilities and do not carry out major assignments. John Alden responds that its marketing representatives have considerable impact on its business because they are the company's sole liaison with the insurance agents who must be relied upon to sell John Alden products.

This Court concludes that the work of the marketing representatives is critically important to John Alden's business because it affects business operations to a substantial degree. The success of the company in New England depends in large part on the success of the marketing representatives who pro-

mote sales of John Alden products. Their success, in turn, rests on their ability to a) understand the nature of the evolving insurance market, b) grasp the subtleties of that market, c) familiarize themselves with their agents, their competitors and the needs of existing and prospective end-purchasers, and d) respond quickly in identifying and promoting a John Alden product when an agent contemplates a particular competitive product.

Having thus found that the marketing representatives' primary duty consists of administrative work directly related to the management policies or general business operations of John Alden and that such work is of substantial importance to the company, this Court concludes that John Alden has met its burden of satisfying the first prong of the short test for administrative exemptions.

## B. *The Exercise of Discretion and Independent Judgment*

The Court now turns to the second prong of the "short test," namely, whether John Alden has met its burden of proving that its marketing representatives engage in work that requires the exercise of discretion and independent judgment. As an important part of that inquiry, the Court again turns for guidance to the regulations promulgated by the Secretary. Specifically, 29 C.F.R. § 541.207(a) provides that,

> in general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered.... [M]oreover, [it] implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance.

This Court makes its determination based upon all the facts, and notes that "the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence." 29 C.F.R. § 541.207(b) and (d)(1).

The Secretary argues that the marketing representatives at John Alden do not exercise "real and substantial" discretion or independent judgment in key aspects of their work because they 1) do not set or negotiate the price or terms of the insurance products purchased and 2) do not make the decision whether to approve an application. Plaintiff's Memorandum at 20. The Secretary further contends that decisions as to which agents to call, when to call them and how to conduct the sales pitch do not require the exercise of discretion "with respect to matters of consequence." *Id.* Finally, the Secretary asserts that making a proposal to meet the needs of a prospective end-purchaser does not require the use of sufficient discretion because it merely involves the collection of pertinent information and the entering of it into a computer.

John Alden argues that its marketing representatives clearly exercise discretion and independent judgment in significant matters. Not only do the representatives in Westborough decide whether and when to promote certain products in the five New England states, but they also 1) maintain close communications with their agents (without the use of scripts or prepared statements), 2) identify the interests and needs of the various agents, and 3) keep current files on their competitors and analyze various product trends to determine how John Alden products can best meet the needs of end-purchasers. John Alden further asserts that marketing representatives often advise the company to adopt new products and product features based upon the feedback they receive from the agents with whom they are in constant contact.

Upon consideration of the arguments set forth by both parties, this Court concludes that the marketing representatives at issue exercise significant discretion and independent judgment in carrying out their duties. They are not merely "skilled" workers who operate within a strict set of rules. Rather, they exercise significant discretion in their daily contacts with various insurance agents as alleged by John Alden. The regulations are replete with examples of jobs in which the use of skills are mistaken for discretion, 29 C.F.R. § 541.207(c), and of decisions which do not require the exercise of "real

and substantial" discretion, 29 C.F.R. § 541.207(d). But the kinds of work done and the decisions made by John Alden marketing representatives do not resemble any of those examples. This Court therefore concludes that the marketing representatives exercise discretion and independent judgment within the meaning of the regulations and thus satisfy the second prong of the short test for administrative exemption.

## ORDER

For the foregoing reasons,

1.  The motion for summary judgment of defendant John Alden Life Insurance Company is ALLOWED; and

2.  The cross-motion for partial summary judgment of plaintiff Robert B. Reich, Secretary of Labor, is DENIED.

So Ordered.